## Ex Parte SHRADER on Habeas Corpus.

POWER OF THE LEGISLATURE TO DELEGATE ITS AUTHORITY.—It was competent for the Legislature, by statute, to delegate to the Board of Supervisors of the City and County of San Francisco, power to make an order that "no person shall establish or maintain any slaughter house, keep herds of more than five swine, keep or cure hides, * * slaughter cattle, * * pursue or maintain or carry on any other business or occupation, offensive to the senses, or prejudicial to the public health or comfort, in any part of the city and county, after the first day of August, 1866," if it could have enacted such order in the form of a statute in the first instance.

POWER OF THE LEGISLATURE.—The Legislature had the power to enact, by statute, such order, unless restrained by the Constitution.

CONSTITUTIONAL RESTRAINTS UPON LEGISLATIVE POWER.—The provisions of the first Article of the Constitution, providing that "acquiring, possessing, and protecting property, and pursuing and obtaining safety and happiness" are inalienable rights, and that "private property shall not be taken for public use without just compensation," are untouched by said order, or the statute enacted by the Legislature, in pursuance of which said order was made. Ex parte Andrews, 18 Cal. 678, is cited as authority.

DISTRIBUTION OF POWERS OF GOVERNMENT.—By the fourth Article of the Constitution, the powers of the Government are divided into three separate departments—legislative, executive, and judicial—and it is provided that neither of these departments shall exercise powers properly belonging to the others.

LEGISLATIVE AND JUDICIAL POWERS.—Legislative power prescribes rules of conduct for the government of the citizen or subject, while judicial power punishes or redresses wrongs growing out of rules previously established. The distinction lies between a rule and a sentence.

THE ORDER OF THE BOARD OF SUPERVISORS NOT A JUDICIAL ACT.—The order in question does no more than lay down a rule for the future guidance of all men, irrespective of calling. It neither charges or convicts the petitioner of anything, and is not the exercise of judicial power.

POWER OF THE LEGISLATURE.—The Legislature has power, as well as the judiciary, to determine facts. Whether the act of doing so will be judicial or not, is dependent upon the use to which the facts are put when found. The fact that the Legislature, in the enabling statute in question, empowered the Board of Supervisors to determine what should be necessary "for the preservation of the

public health and the prevention of contagious diseases," etc., and the fact that the Board, acting within the scope of its said authority, determined the characteristics and injurious tendencies of the several acts forbidden in said order, do not stamp a judicial character upon either the statute or order.

VALIDITY OF THE ORDER OF THE BOARD OF SUPERVISORS.—The enabling statute, under which the order of the Board of Supervisors was made; is not in contravention of any constitutional provision, and the order is within the power conferred by the statute, and is valid.

*Haight & Pearson*, for Petitioner.

*J. G. McCullough*, for Respondent.

The facts are stated in the opinion of the Court.

By the Court, SHAFTER, J.:

The petitioner was convicted in the Police Court of the City and County of San Francisco of keeping and maintaining a slaughter house within certain limits, in violation of an order of the Board of Supervisors of the said city and county. The order is as follows: " No person shall establish or maintain any slaughter house; keep heards of more than five swine; cure or keep hides, skins or peltry; slaughter cattle, swine, sheep or any other kind of animal; pursue or maintain, or carry on any other business or occupation offensive to the senses or prejudicial to the public health or comfort, in any part of this city and county, after the 1st day of August, 1866, west of San Bruno turnpike road and north of Islais Creek, except as otherwise provided by law." A violation of the order is made punishable by fine or imprisonment.

The proximate question presented is, as to the power of the Board of Supervisors to pass this order; but the real or ultimate question is as to the constitutional authority of the Legislature to pass the Act, under and in pursuance of which the order of the Board was adopted. The Act referred to was passed April 25th, 1863. (Acts 1863, p. 540.) By its first section the Board of Supervisors of the City and County

of San Francisco is authorized, amongst other things, " to make all regulations which may be necessary or expedient for the preservation of the public health and the prevention of contagious diseases." Further on, the Board is author- ized " to prohibit and suppress, or to exclude from certain limits, or to regulate all occupations, houses, places, pas- times, amusements, exhibitions and practices which are against good morals and contrary to public order and decency, or dangerous to the public safety." It will be observed that the grant of power to the Board to legislate in respect to the public health is as broad as it is in relation to the public morals and safety. If the power fails in con- nection with either one of those purposes, it must fail as to all three.

It is apparent that the Legislature could confer power upon the Board to pass the order if it could have enacted it directly in the form of a statute in the first instance. The real question to be determined then is whether the power of the Legislature to legislate concerning the public health is so narrowed by constitutional restraints that it cannot regulate the business of slaughtering cattle in populous towns, by limiting its prosecution to particular localities or quarters therein. We must hold in favor of the power unless its unconstitutionality is clear. (*Bourland* v. *Hildreth*, 26 Cal. 162.)

It is declared in the first Article of the Constitution that " acquiring, possessing, and protecting property, and pursu- ing and obtaining safety and happiness," are inalienable rights; and that " private property shall not be taken for public use without just compensation." By the fourth Arti- cle the powers of the Government are divided into three separate departments—legislative, executive and judicial; and it is provided, that neither of these departments shall exercise powers properly belonging to the others.

First—It is suggested rather than urged in argument that the provisions of the order contravene both the clauses cited

from the first Article of the Constitution. It is manifest, however, that the power exercised primarily by the Legislature in this instance has nothing to do with the eminent domain. The result of which the petitioner complains is personal imprisonment for a misdemeanor, and not a condemnation of his property to the public use without compensation. As to the other objection, that the order interferes with the constitutional right of, the petitioner to acquire, possess and protect property, both his capacities and rights in that regard are untouched by the order. Voluntary obedience to the order would have involved neither a surrender of the right nor a disuse or suspension of the capacity, and disobedience to it on the part of the prisoner has been visited with no description of civil disability. It has been followed simply by a personal imprisonment as a criminal consequence coming of a judgment of conviction under all the forms of the common law. The objection now in question was presented in *Ex parte Andrews*, 18 Cal. 678. The objection was asserted there against the constitutionality of an Act of the Legislature of 1861, entitled " An Act for the observance of the Sabbath." The objection was overruled and on the broad ground that the clause of the Constitution guaranteeing the right of acquiring property " does not deprive the Legislature of the power of prescribing the mode of acquisition or of regulating the .conduct and relations of the members of society in respect to property rights." The order complained of here is very clearly a regulation belonging to the class referred to, and the objection must be overruled on the authority of the case cited.

Second—But it is urged that the Legislature could neither pass nor authorize the municipal Board to pass the ordinance in question, for the reason that the enactment involves an exercise of judicial power.

Judicial power is exercised by Courts in the trial and determination of controversies, the Court having jurisdiction over both subject matter and parties. The result reached is a judgment precluding parties and privies from disputing

either the facts or the law of them as declared. Legislative power prescribes rules of conduct for the government of the citizen or subject, while judicial power punishes or redresses wrongs growing out of a violation of rules previously established. The distinction lies, in short, between a sentence and a rule. The order in question is not a sentence upon the petitioner. It charges him with nothing and it convicts him of nothing. He is not named in it. The order does no more than lay down a rule for the future guidance, not of butchers particularly, but of all men irrespective of calling.

It ' is said, however, that the order finds or assumes that slaughter houses within the prohibited limits are nuisances and as such detrimental to the public health. All this may be true, and still it may not be true that the finding was by an exercise of judicial power. If the relations of the butchering business to the public health were inquired into by the Board of Supervisors with a view to legislation, and if the finding on the question of fact was made the basis of a rule of conduct thereafter, binding upon all alike, and not a ground of judgment against some person or thing as for the violation of a pre-existing law, then the power used in the enacting of the order was legislative and not judicial. There is and can be no pretence that the order is of the latter impression. Facts are or should be the basis of legislation as well as of judgment, and where there is doubt or controversy concerning them, the considerate legislator stays his hand until they have been ascertained. So far as process is concerned, that of the legislator and that of the Judge are the same; the difference lies in the use to which the facts are put when found. This principle is fully recognized in *Ex parte Andrews*, previously cited. The Court say : " The Legislature under our system has power to repress whatever is hurtful to the public good, and is generally the exclusive judge of what is or is not hurtful, the only limitations being those prescribed in the Constitution. Subject to those limitations the Legislature has not only the power to regulate but

the power to suppress particular branches of business deemed by it immoral and prejudicial to the general good."

It seems to be admitted in argument that if slaughter houses were nuisances *per se*, the order would not be obnoxious to the constitutional objection now under consideration. A nuisance *per se*, as used in argument, is a nuisance which the Judge can declare to be such without inquiry into extrinsic facts; that is to say, a nuisance by enumeration rather than by definition.

The question presented is one of legislative power, and we are not aware that the limits of that power are to be determined in any case by the mere vigor of common law definitions or categories. The Legislature can add to the *mala in se* of the common law the *mala prohibita* of its own behest. Common law definitions or schedules, so far from being limitations upon legislative power here, are the most familiar subjects of legislative action. While the general terminology of the law is very rarely interfered with, nothing is more common than the enlarging or narrowing by the Legislature of the import of common law terms. Aside from this, the order in question does not find the fact, nor does it follow that it proceeds upon the idea that the slaughtering business would be a nuisance in the full legal sense, if carried on within the prohibited limits. The power to regulate or prohibit conferred upon the Board of Supervisors not only includes nuisances, but extends to everything " expedient for the preservation of the public health and the prevention of contagious diseases." Now there are many things not coming up to the full measure of a common law or statute nuisance, that might, both in the light of scientific tests and of general experience, pave the way for the introduction of contagion and its uncontrollable spread thereafter. Slaughter houses, as ordinarily, and perhaps invariably conducted in this country, might, within the limits of reasonable probability, be attended with these consequences. A competent legislative body has passed upon the question of fact involved, and we cannot go behind the finding. So far as we can

know on this record, the power conferred has been exercised intelligently and in good faith. (*Ex parte Andrews, supra.*)

The views which we have presented are fully sustained by the cases.

In *Coates* v. *The Mayor and Aldermen of the City of New York,* 7 Cowen, 585, it appeared that the corporation, under an Act of the Legislature authorizing it " to regulate, or, if necessary, to prevent the interment of the dead within the city," passed a bylaw prohibiting such interments in certain parts of the city, under a penalty. It appeared that the plaintiff in error had the right to make the particular interment complained of, under a grant from the corporation, and the grant contained a covenant for quiet enjoyment. It was held that the bylaw need not recite or adjudge on its face that it was " necessary," for the necessity was to be implied from the fact of its passage; that the Act under which the bylaw was passed was not unconstitutional, either as impairing the obligation of contracts or as taking private property for public use, but stood on the ground of the authority of the Legislature to make police regulations in respect to nuisances.

In *Vanderbilt* v. *Adams,* 7 Cow. 349, the constitutionality of an Act of the Legislature of New York was considered, which authorized harbor masters to regulate and station vessels in the East and North Rivers in the City of New York, and imposed a penalty for disobedience to the orders of the harbor masters. Though their authority under the Act extended to and was in fact applied to a vessel belonging to the plaintiff in error, and lying at his own wharf, still it was held that the Act was not unconstitutional as interfering with private property, or as impairing the obligation of contracts. The constitutionality of the Act was upheld on the ground that it was a police regulation. The Court say : " The sovereign power in a community may and ought to prescribe the manner of exercising individual rights over property. It is for the better protection and enjoyment of that absolute dominion which the individual claims. The

power rests on the implied right and duty of the supreme power to protect all by statutory regulations, so that, on the whole, the benefit of all is promoted. Every public regulation in a city may and does in some sense limit and restrict the absolute right that existed previously. But this is not considered as an injury. So far from it, the individual, as well as others, is supposed to be benefited. * * * The numerous cases in cities, much stronger than the present, where this power has been deemed constitutional and never drawn in question, goes strongly to prove that regulations like those in question do not fall within the principle contended for by the plaintiff in error. The owner of a lot in a city intends to build of wood; the constituted authorities say: 'You must not exercise that right, it is dangerous to all. You may build of brick or stone, because in this way the safety of all is protected.' Can the owner with impunity violate such a law because he has the absolute right of property? It has not been heretofore so considered."

In *Van Wormer* v. *Mayor, etc., of Albany*, 15 Wend. 263, it appeared that the Board of Health of the City of Albany was authorized by an Act of the Legislature to establish such regulations as they in their discretion should think proper for the preservation of the public health. The Board adjudged certain premises to be a nuisance, and thereupon the corporation passed an ordinance directing its abatement. The action was brought to recover damages sustained by reason of the abatement, and it was held that the plaintiff could not go behind the ordinance on the question of nuisance. Though it was admitted that the power which had been exercised was large and discretionary, still it was considered that "where the public health was involved the power should exist somewhere to be exercised upon a proper emergency. If the civil authorities were obliged to await the slow progress of a public prosecution the evil arising from nuisances would seldom be avoided."

*Cooper et al.* v. *Metropolitan Board of Health*, 32 Howard P. R. 107, was an action brought to prevent the enforcement

of an ordinance by the Board to the effect that no person should engage or *continue* in the business of a butcher or cattle dealer at or in any public or private market in the Cities of New York or Brooklyn without a permit therefor from said Board. And providing further, that no cattle should be driven in the generally built up portions of either of said cities except between the hours of nine of the evening and one hour after sunrise the next morning; and that no cattle should be yarded in said built up portions without a permit from the Board. It was insisted that the Act of the Legislature, from which the power of the Board to pass the ordinance was derived, was unconstitutional; and for the reason, among others, that it conferred upon the Board judicial powers, in contravention of the sixth Article of the Constitution, which provides for and limits the judicial department of the Government. This, as well as the other objections, was overruled by the Court, and the constitutionality of the Act affirmed.

In England, the power in question has been exercised by the legislative department of the Government, sometimes directly, but more frequently through the intervention of municipal corporations, from the highest antiquity. And in the United States, where legislative power has ever been subjected to constitutional restraints, the public judgment has never been so far misguided as to deny to legislative bodies a power without which there would be few social or common rights which individual caprice or rapacity would be bound to respect.

The prayer of the petitioner is denied, and the prisoner remanded.

Neither Mr. Justice Rhodes nor Mr. Justice Sanderson expressed any opinion.