[No. 2,603.]

# EBEN JOHNSON *v.* J. W. SIMONTON, G. K. FITCH, AND L. PICKERING.

"SWILL-MILK ORDINANCE" OF SAN FRANCISCO—CONSTITUTIONALITY OF HEALTH REGULATIONS.—The statute of April 25th, 1863, conferring authority upon the Supervisors of San Francisco "to make all regulations which may be necessary or expedient for the preservation of the public health" (Stats. 1863, p. 540), was within the constitutional power of the Legislature to enact; and under it the Supervisors had authority to enact the ordinance (No. 730) against feeding cows on still slops, and vending the milk of cows so fed.

ALLEGED LIBEL ON VENDOR OF "SWILL MILK"—QUESTION OF WHOLE-SOMENESS OF SUCH MILK.—In an action of libel for charging a person with selling "swill milk" and thereby poisoning the people of San Francisco, where it appeared that the alleged libels were only in respect of the unlawful business carried on by plaintiff, in violation of a city ordinance against the vending of the milk of cows fed on still slops, and defendant justified under such ordinance, and there was judgment for defendant: *Held,* on appeal from the judgment, that the scientific correctness of the determination by the Supervisors of the unwholesomeness of such milk was not open to inquiry in the Supreme Court.

PENALTY FOR ACT AMOUNTS TO PROHIBITION OF ACT.—A city ordinance, duly authorized, imposing a penalty for feeding still slops to cows, and also for vending the milk of cows so fed, amounts to an authoritative prohibition in both respects; and the prohibited act becomes thereby unlawful.

NO LIBEL IN TRULY CHARGING CARRYING ON OF UNLAWFUL BUSINESS.—Where an alleged libel is only in respect to an unlawful business carried on by plaintiff, the action cannot be maintained. The illegality of the business is an answer to the complaint.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

The facts are stated in the opinion; but it may be added that when the defendants offered Ordinance No. 730 in evidence, their counsel stated that it was offered, not in mitigation of damages, but as a bar to the plaintiff's right to recover in the action. Plaintiff objected, on the grounds that it was irrelevant and incompetent, immaterial, and no justification of the publications; that the ordinance was illegal and void for want of authority in the Supervisors to

pass it; and that, if admissible at all, it was only admissible in mitigation of damages, and not in bar of the action.

There having been judgment for defendants, the plaintiff appealed therefrom, and assigned as errors the admission of the ordinance in evidence as a bar to the action, and alleged error in rendering judgment for defendants for costs.

*George W. Tyler,* for Appellant.

If the Supervisors of San Francisco had authority to pass Order 730, a violation of it by plaintiff subjected him to the penalty provided, but was no justification of the libels. (*Rex* v. *Robinson,* 2 Burr. 800; *People* v. *Stevens,* 13 Wend. 341; *Brown* v. *Buffalo & S. L. R. R.* 22 Smith, 191; *Behan* v. *People,* 17 N. Y. 516.)

But the Legislature would have no authority to pass an Act to prohibit an individual from feeding his stock upon any particular kind of food. It would be an unwarrantable interference with the liberty of the citizen. If the Legislature can prohibit individuals from feeding their animals with one kind of food, it may another; and they may go so far as to prescribe what kinds of food shall be fed, and in what quantity, which, we claim, would be an unwarrantable interference on the part of the Legislature.

There is nothing in the chemical composition of distillers' wash that would have a tendency to produce diseased milk.

Again, even though the Legislature had power to pass such a law, it did not delegate authority to do so upon the Supervisors of San Francisco; and without such delegation of power the Supervisors certainly could not exercise it. If any such delegation was made, it must have been by the Consolidation Act, which is a private statute, and not being pleaded, no notice of it can be taken.

*Barnes & Bowie,* for Respondents.

The Supervisors had power to pass the order. (Stats. 1863, p. 540; *Ex Parte Andrews,* 18 Cal. 678; *Cohen* v. *Wright,* 22 Cal. 321; *Jackson* v. *Shawl,* 29 Cal. 271; *Ex Parte Shrader,* 33 Cal. 280).

It was unnecessary to plead or offer the statute, for the reason that the Court took judicial notice of it. (*Pierce* v. *Kimball,* 9 Greenl. 54; *Biemon* v. *Tugnot,* 5 Sandf. 154; *Ex Parte Shrader,* 33 Cal. 280.)

The order having imposed a penalty upon any one who should feed cows on still slops, such feeding became unlawful, though not in terms declared illegal. (*Griffith* v. *Wells,* 3 Denio, 226; *Jackson* v. *Shawl,* 29 Cal. 272.)

The plaintiff, having been engaged in an illegal business, cannot recover damages for a libel in reference to such business. (Towns. Libel & Sl. 197; 1 Hilliard, Torts, 278; *Manning* v. *Clement,* 7 Bing. 368; *Hunt* v. *Bell,* 7 Moore, 212; *Spall* v. *Massey,* 2 Stark, 559; *Foulger* v. *Newcomb,* Law Rep. 2 Ex. 330; *Yrisarri* v. *Clement,* 2 Car & P. 538; 3 Bing. 432; 2 Bos. & P. 284; 28 N. Y. 332; 9 Paige, 586.)

By the Court, WALLACE, C. J.:

This was an action brought against the defendants, proprietors and publishers of the *Daily Evening Bulletin,* a newspaper published in the City and County of San Francisco, to recover damages for the publication in said newspaper of two alleged libels upon the plaintiff. The plaintiff alleges that at the time of the publishing of the libels complained of he was engaged in the business of keeping cows, near Black Point, in that city and county, and feeding them upon hay and the slops of a distillery, and selling the milk of these cows for human food.

The alleged libels complained of (omitting the inuendoes) are respectively as follows:

"A week ago officer Stone was detailed by Chief Burke to watch the Black Point milk ranches. He found on E. Johnson's ranch about one hundred and twenty cows feeding on a thin, sour slop, coming by flumes from the distillery tank. The men in the shed denied that they were feeding swill, and said his cows were fed on hay, etc. By the advice of Prosecuting Attorney Louderback a close watch was kept on the place all the week, and yesterday the officer entered the shed and found the cows snorting like hogs, and their heads in troughs filled with thick, sour swill. The men in charge of the place, James Clark and M. T. Chase, no longer denied that they were feeding on swill, but said it was by Mr. Johnson's orders, and that he expected to be arrested, and that if they came after him he would give himself up. Warrants have been taken out by Mr. Louderback against E. Johnson and his two employés, and are now in officer Stone's hands. In a few days, therefore, we shall see whether a practice that is as deadly as the assassin's steel or lead to the infants who suffer from it, can be carried on with impunity.

"For some time past the *Bulletin* and other journals of this city have endeavored to warn the people of the danger incurred by using milk furnished by cows fed upon distillery refuse. Full grown persons can stand a certain amount of poison mixed with their food for a time, but there is little doubt that deleterious compounds, if steadily used, in the end will break down the strongest constitutions and shorten life many years. In cities individuals are liable to be deceived in the purchase of food, and it is sometimes the case, even in exercising the utmost care, that unhealthy animals will be slaughtered and offered for sale. Men may in good faith vend an article injurious to health, but all admit

the necessity of severe punishment in case of an attempt to palm upon the community a commodity known to be diseased. Should cattle be slaughtered and habitually sold in our markets, known to the vendor to have been diseased previous to being killed, the entire community would demand the punishment of the offenders. Tampering with life in the way suggested would not be tolerated, yet we permit the sale of milk, which is quite as dangerous.

" In San Francisco it has been shown that the practice has been introduced of feeding cows from the refuse of distilleries, and that this refuse is not only fed in the neighborhood of the city, but is carted into the country and fed to cows whose milk is brought here and sold. This milk the community should know is unfit to be used. It in truth contains a poisonous quality. It will destroy life, if given steadily to children for much length of time, and there is little doubt that it undermines the health of those who habitually use it.

" Dr. Rowell, in a lecture at Dashaway Hall, gave it as his opinion that one death per day was caused by the use of this milk alone.

" Medical authority agrees that milk produced by cows fed upon the slops of distilleries is most injurious, and does destroy life.

" Neither grown persons nor children can use it for much length of time without the most pernicious results.

" There is no dispute as to the properties of milk obtained from such a source.

" There is danger in its use. Even animals are killed by it when fed steadily to them.

" The Board of Supervisors, knowing its deleterious qualities, have passed an ordinance forbidding the feeding of cows with distillery refuse, and the vending of milk produced elsewhere by the feeding of such refuse.

" There has been sufficient notice given to stop a traffic which strikes at the health and lives of our citizens. There

is no excuse for men who send such milk to this market—ignorance can no longer be pleaded in extenuation of a crime. Cows are fed upon the poisonous compound because it costs little, and money can be made from the traffic.

"Every man arrested hereafter, who may be caught in feeding this article to animals whose milk is sought to be sold in this city, should be punished to the utmost extent of the law; and it should be the business of the Health Officer, or some other competent person, to test milk brought to market for sale, and every person who vends diseased milk should be prosecuted.

"It would be criminal to trifle with a subject which is so important to the public. No man has a right to bring an article to market injurious to the health of our citizens, and which destroys, according to accepted testimony, one person a day. Not another quart of poisonous milk should be permitted to be sold in San Francisco. Will those whose duty it is see that no more lives be sacrificed to the lust of gain which has prompted dealing in milk that destroys human life?"

The defendants, in their answer, admitted the publication alleged, but denied that the articles were published with the intent to injure the plaintiff in his business or good name, or that the articles published were defamatory or malicious, and alleged that they contained a fair and true statement of facts, which were of public notoriety, and that the facts stated in these articles, with reference to the deleterious character of cows so fed, were true. They also pleaded that the business of the plaintiff, in vending the milk of cows fed upon still slops, was illegal and in violation of a certain order of the Board of Supervisors of said city and county, being Order No. 730, entitled an order "to prohibit the feeding of milch cows on still slops, and the sale of milk from cows fed on still slops, and from sick or diseased cows," approved September 18th, 1866.

At the trial, it being admitted that the articles published were published of and concerning the plaintiff only in respect of his business of feeding cows upon still slops and vending their milk, and that he had sustained damage in respect of the profits of that business in a named sum, the plaintiff rested.

The defendants then offered in evidence said Order No. 730, which is as follows:

## " ORDER No. 730.

" To Prohibit the Feeding of Milch Cows on Still Slops, and the Sale of Milk from Cows Fed on Still Slops, and from Sick or Diseased Cows. Approved September 18th, 1866.

*The People of the City and County of San Francisco do ordain as follows:*

" Section 1. No person shall feed, or cause to be fed, to any milch cow, any still slops or other food calculated to render the milk of such cow unwholesome or unsuitable for human food.

" Sec. 2. No person shall sell, deliver, supply, or furnish to any person any milk from any cow fed, in whole or in part, upon still slops or other food calculated to render the milk of such cows unwholesome or unsuitable for human food; and no person shall sell, deliver, or supply to any person any milk from any sick or diseased cow.

" Sec. 3. Any person who shall violate any of the provisions of this order shall be deemed guilty of misdemeanor, and on conviction thereof shall be punished by a fine of not less than twenty-five dollars nor more than five hundred dollars, or by imprisonment in the County Jail not less than ten nor more than one hundred days."

This ordinance was offered for the purpose of showing that the business of vending the milk of cows fed on still

slops, in which the plaintiff was engaged, was an unlawful business or pursuit, and as constituting a bar to the action. The plaintiff objected to the evidence upon several grounds, which will be noticed hereafter, but the objections were overruled and the ordinance admitted in evidence. Judgment was thereupon rendered in favor of the defendants, from which judgment this appeal is taken.

1. It is objected that the ordinance was one beyond the authority of the Board to enact. The statute of April 25th, 1863 (p. 540), confers authority upon the Board "to make all regulations which may be necessary or expedient for the preservation of the public health," etc.; and upon the authority of *Ex Parte Shrader*, 33 Cal. 279, and upon principle as well, we think, that statute to be one within the constitutional power of the Legislature to enact.

If it indeed be a fact that the milk of cows, fed in whole or in part upon still slops, is unwholesome as human food, there can be no doubt of either the authority or the duty of the Board to enact the ordinance in question, and the scientific correctness of the determination by the Board of the matter of fact involved is not open to inquiry here.

2. The ordinance imposing a penalty for the feeding of the slops to cows, as well as for vending the milk of cows so fed, amounted to an authoritative prohibition in both respects. (*Jackson* v. *Shawl*, 29 Cal. 267.) Besides the ordinance here contains express words of prohibition, and the prohibited acts became thereby unlawful acts.

3. And it thus appearing that the alleged libels were only in respect of an unlawful business carried on by the plaintiff, it results that the action cannot be maintained, "for I think (said BEST, Ch. J.) that where a man complains of a libel written respecting an illegal transaction in which he is engaged, the illegality of that transaction is an answer to

CAL. REPS. XLIII—32

his complaints." (3 Bing. 440; see, also, Hilliard on Torts, 278; Townsend on Libel and Slander, 197–8, and cases there cited.)

There is nothing in the other points.

The judgment must be affirmed, and it is so ordered.

Mr. Justice NILES did not participate in the foregoing decision.