## In re WILSHIRE.

(Circuit Court, S. D. California. July 19, 1900.)

### No. 46.

**1. CONSTITUTIONAL LAW—POLICE REGULATIONS—REVIEW BY COURTS.**

Laws enacted in the exercise of the police power, whether by a municipal corporation acting in pursuance of the laws of a state, or by a state itself, must be reasonable, and are always subject to the provisions of both the federal and state constitutions and to judicial scrutiny; but the courts will not declare such laws invalid as unconstitutional except in clear cases.

**2. CONSTITUTIONAL LAW—POLICE POWERS OF STATE—ORDINANCE REGULATING HEIGHT OF BILLBOARDS.**

A municipal corporation may lawfully, in the exercise of general police powers delegated to it by its charter, regulate the height of billboards maintained therein, within reasonable limits, and a city ordinance limiting the height of such structures to six feet from the ground or sidewalk is not so clearly unreasonable as to justify a court in holding it void as in violation of constitutional rights of property.

On Petition by H. G. Wilshire for Writ of Habeas Corpus.

Borden & Carhart, for petitioner.

Walter F. Haas, City Atty.

ROSS, Circuit Judge. Section 11 of article 11 of the constitution of the state of California provides: "Any county, city, town or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with the general laws." By section 22 of article 1 of the charter of the city of Los Angeles that city is given the power "to make and enforce within its limits such local, police, sanitary and other regulations as are not in conflict with general laws and are deemed expedient to maintain the public peace, protect property, promote the public morals and preserve the health of its inhabitants"; and by subdivision 13 of section 2 of article 1 of its charter the city is empowered to license and regulate the carrying on of any and all professions, trades, callings, and occupations within the limits of the city, to fix the amount of license tax thereon, and to provide the manner of enforcing the payment of the same: provided, that no discrimination shall be made between persons engaged in the same business otherwise than by proportioning the tax upon any business to the amount of business done. On the 13th day of March, 1900, the city, through its council and mayor, adopted an ordinance entitled "An ordinance regulating the height to which any fence, building, or other structure, erected, built, constructed, or maintained for the purpose of painting thereon any sign or advertisement for advertising purposes, or posting thereon or affixing or attaching thereto or thereon any bills, signs, or other advertising matter for advertising purposes, shall be erected, built, constructed, or maintained," the first section of which declares:

"That it shall be unlawful for any person, firm or corporation to erect, build, construct or maintain in the city of Los Angeles any fence, building or other structure of or to a greater height than six feet from the surface of a sidewalk, street, or the ground where the same is erected, built, constructed or maintained, for the purpose of painting thereon any sign or advertisement for advertising purposes or posting thereon or affixing or attaching thereto or thereon any bills or signs, placards, cards, posters or other advertising matter for advertising purposes."

The second section of the ordinance prescribes the punishment to be imposed on those violating its provisions. The petitioner was charged with unlawfully maintaining on certain premises situated within the city of Los Angeles (shown by the case made before the court to have been at the time owned or leased by him) a certain structure of a greater height than six feet from the surface of the ground for the purpose of painting thereon a sign for advertising purposes, upon the trial of which charge he was duly convicted, and adjudged to pay a fine in a sum within the statutory amount, in default of which payment he was adjudged to be, and was in fact, imprisoned, and from which imprisonment he seeks, by the present proceeding, to be discharged. The question in the case, therefore, relates to the validity of the ordinance mentioned; the petitioner contending that it deprives him of rights secured to him by the fourteenth amendment of the constitution of the United States, which declares, among other things, that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person with-

in its jurisdiction the equal protection of the laws." These provisions of the constitution secure to every one the right to engage in any lawful business, and to use and enjoy his own property at his will and pleasure, subject to the imposition of lawful licenses, taxes, and other legal regulations, and to the maxim "Sic utere tuo ut alienum non lædas." "Many of the powers exercised by municipalities," says Judge Dillon in his work on Municipal Corporations, "fall within what is known as the 'police power' of the state, and are delegated to them to be exercised for the public good. Of this nature is the authority to suppress nuisances, preserve health, prevent fires, to regulate the use and storing of dangerous articles, to establish and control markets, and the like. These and other similar topics will be considered in appropriate places. But it may here be observed that every citizen holds his property subject to the proper exercise of this power, either by the state legislature directly, or by public or municipal corporations to which the legislature may delegate it. Laws and ordinances relating to the comfort, health, convenience, good order, and general welfare of the inhabitants are comprehensively styled, 'Police Laws or Regulations.' It is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffers injury, it is either damnum absque injuria, or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure. The citizen owns his property absolutely, it is true. It cannot be taken from him for any private use whatever, without his consent, nor can it be taken for any public use without compensation; still he owns it subject to this restriction, namely, that it must be so used as not unreasonably to injure others, and that the sovereign authority may, by police regulations, so direct the use of it that it shall not prove pernicious to his neighbors, or the citizens generally. These regulations rest upon the maxim, 'Salus populi suprema est lex.' This power to restrain a private injurious use of property is essentially different from the right of eminent domain. It is not a taking of private property for public use, but a salutary restraint on a noxious use by the owner, contrary to the maxim, 'Sic utere tuo ut alienum non laedas.'" 1 Dill. Mun. Corp. (4th Ed.) p. 211, par. 141.

Laws enacted in the exercise of the police power, however, whether by a municipal corporation acting in pursuance of the laws of a state, or by a state itself, must be reasonable, and are always subject to the provisions of both the federal and state constitutions, and they are always subject to judicial scrutiny. Yick Wo v. Hopkins, 118 U. S. 372, 6 Sup. Ct. 1064, 30 L. Ed. 220; Forster v. Scott, 136 N. Y. 577, 584, 32 N. E. 976, 18 L. R. A. 543; Toledo, W. & W. Ry. Co. v. City of Jacksonville, 67 Ill. 37; Ex parte Whitwell, 98 Cal. 73, 32 Pac. 870, 19 L. R. A. 727; In re Marshall (C. C.) 102 Fed. 323. And such laws must, as said by the court of appeals of New York in Re Jacobs, 98 N. Y. 105, "tend towards the preservation of the lives, health,

morals, or welfare of the community, and the court must be enabled to see some clear and real connection between the assumed purpose of the law and the actual provisions thereof, and that the latter tend in some plain and appreciable manner towards the accomplishment of the objects for which the legislature may use this power." In Mugler v. Kansas, 123 U. S. 661, 8 Sup. Ct. 297, 31 L. Ed. 210, the supreme court said:

"The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, the statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution."

Authorities to the same effect might be multiplied almost without number, but upon propositions so well settled it is not deemed necessary. While the power of the courts to declare a municipal ordinance or a state statute that contravenes a provision of the fundamental law invalid is undoubted, it is equally well settled that the courts should exercise the power with great caution, and only in cases where the conflict is clear. Bearing in mind these principles of law, let us examine the city ordinance here in question. As has been seen, the thing thereby inhibited is the erection or maintenance anywhere within the city of Los Angeles, for the purpose of painting thereon or attaching thereto any sign, card, placard, poster, or other advertising matter for advertising purposes, of any structure exceeding in height six feet. If the limit of height fixed by the city authorities had been 100 feet, instead of 6, nobody, I apprehend, would doubt that it came within their power to provide for the safety, comfort, and welfare of the inhabitants of the city; just as they may regulate the height of dwelling houses and business blocks, establish fire limits within which no house shall be built except of brick, stone, or iron; prescribe the limits within which slaughter houses, soap factories, etc., shall only be built, etc. Any house or block may be constructed, if not prohibited by proper regulations, of such height as to shut out from the inhabitants of the city light, air, or sunshine, and, when subject to earthquakes or other violent disturbances, otherwise jeopardize the health and safety of its people. The same thing is true in respect to structures built for advertising purposes, commonly called "billboards." It is a matter of common knowledge, and therefore within the notice of the court (Brown v. Spilman, 155 U. S. 665, 15 Sup. Ct. 245, 39 L. Ed. 304), that these are usually, if not invariably, cheap and flimsy affairs, constructed of wood, and erected on vacant lots of land along or near to the streets, in order to catch the eye of the passers-by. Such structures, if of sufficient height, may be very readily blown over by wind, or shaken down by an earthquake, and in such event (depending upon their height and proximity to the public thoroughfare) may very easily cause injury to persons standing or passing thereon. Moreover, the views in and about a city, if beautiful and unobstructed, constitute one of its chief attractions, and in that

way add to the comfort and well-being of its people. Billboards for advertising purposes, erected to any great height, would undoubtedly be subject to all of these, as well as other, objections, and such structures are, therefore, plainly within the regulating power of the governing body of the city. The matter before the court is, therefore, narrowed to the mere question whether the maximum height to which such structures are permitted by this ordinance to be erected, to wit, six feet, is so unreasonably low as to amount to an invasion of the petitioner's constitutional right to use and enjoy his private property as he chooses. It must be admitted that the limit prescribed approaches very closely, if it does not reach, the point of unreasonableness. But between the line above which the height prescribed would be obviously reasonable and below which it would be obviously unreasonable there is a range concerning which reasonable and fair-minded men may well differ. The action of the municipal authorities, exercised within that range, ought not, in my opinion, to be interfered with by the courts. In a very recent case before Judge Rhodes of the superior court of Santa Clara county, Cal., that learned judge declined to interfere with an ordinance fixing 10 feet as a maximum height for the erection of such structures, saying, in his opinion:

"In this case, if the prohibition were against a height above 50 feet, there could be no question of its validity, any more than there would be in the other cases given as to the height of houses. If they were limited to only 2 feet, it would be equally clear that it would be unreasonable. Now, between those points there is a reasonable limit. The authorities that have passed the ordinance have said that, in their opinion, 10 feet is not an unreasonable limit. Can the court take upon itself to say that it is unreasonable? If they had said 15 feet, I do not think there could be any question about its validity. If they had said 8 feet, or 9 feet, or 10 feet, or 12 feet, it is very difficult to find any point where the court could intervene, and hold that the limitation of the height is not reasonable. I do not think that the court can declare that 10 feet is unreasonable." Siebe v. City of San José (recently decided).

I entertain a good deal of doubt in respect to the reasonableness of the maximum limitation placed upon the structures in question by the municipal authorities of the city of Los Angeles, but the fact that this doubt exists is sufficient reason for the court to decline to adjudge the ordinance invalid. It is only in clear cases that such a judgment should be given. It results from what has been said that the petition must be dismissed, and the prisoner remanded to the custody of the officer. It is so ordered.