[S. F. No. 2919.   In Bank—September 16, 1903.]

## ODD FELLOWS' CEMETERY ASSOCIATION, MASONIC CEMETERY ASSOCIATION, and HENRY PLAGEMAN, Appellants, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

MUNICIPAL ORDINANCE—PROHIBITION OF BURIALS IN CITY LIMITS—POLICE POWER—CITY CHARTER—CONSTITUTIONAL LAW.—An ordinance of the city and county of San Francisco, prohibiting interments of dead bodies within the city limits, exclusive of those portions belonging to the United States, under a penalty for violation of its provisions, is a valid exercise of the police power of the city vested in it by section 11 of article XI of the state constitution. The word "necessary" in the grant of power contained in the city charter does not limit or restrict the police power conferred by the constitution upon its legislative body, which exercises within the city limits all of the police power of the state, subject only to the control of general laws.

ID.—ORDINANCE NOT IN CONFLICT WITH GENERAL LAWS.—Such ordinance is not in conflict with any general law. It does not conflict with the statute for the incorporation of rural cemetery associations, and allowing them to hold three hundred and twenty acres of land to be occupied exclusively for cemeteries, nor with the provisions of the Penal Code regulating burials.

ID.—NUISANCES—LIMIT OF POLICE POWER.—The police power of the board of supervisors of the city and county of San Francisco vested in them under the constitution, is not confined to the regulation or suppression of those things which the law declares to be nuisances in themselves. Whenever a thing or act is of such a nature that it may become a nuisance, or may be injurious to the public health if not suppressed or regulated, the legislative body may, in the exercise of its police power, make and enforce ordinances to regulate or prohibit such act or thing, although it may never have been offensive or injurious in the past.

ID.—FUTURE CONDITIONS TO BE CONSIDERED.—In the enactment of police regulations the legislative body is not confined to present conditions alone, but may look to the future, and make such provisions as may be reasonably expected to be necessary to promote and preserve the public health and welfare in the immediate growth and progress of the city.

ID.—REASONABLENESS OF REGULATION—POWER OF COURTS—DECISION OF LEGISLATIVE BODY.—Except where the court can see, in the light of facts properly brought to its knowledge, that a given police regulation has no just relation to the object which it purports to carry

out, and no reasonable tendency to preserve or protect the public safety, health, comfort, or morals, the decision of the legislative body as to the necessity or reasonableness of the regulation, is conclusive.

ID.—PROPERTY HELD SUBJECT TO POLICE POWER.—All property is held subject to the exercise of the police power; and the provisions of the constitution forbidding laws impairing the obligation of contracts, and declaring that property shall not be taken without due process of law, have no application in cases where the police power is exercised.

ID.—MOTIVES OF LEGISLATIVE BODY.—Where there is nothing on the face of the ordinance to show that it was passed for private purposes, and from improper motives, no inquiry or proof to show the motive impelling its passage can be allowed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Robert Harrison, and J. F. Cowdery, for Appellants.

Equity has jurisdiction to restrain the enforcement of a municipal ordinance where extrinsic evidence shows that the end to be sought is illegal and injurious to property rights. (2 Dillon on Municipal Corporations, secs. 907, note, 908, 922; *Heywood* v. *Buffalo,* 14 N. Y. 536; *Ewing* v. *St. Louis,* 5 Wall. 413; *Redlands etc.* v. *Redlands,* 121 Cal. 365, 370; *San Mateo County* v. *Coburn,* 130 Cal. 631, 634; 17 Am. & Eng. Ency. of Law, pp. 269, 270; *Mayor etc. of Baltimore* v. *Radecke,* 49 Md. 217, 231, 232;[1] *Deems* v. *Mayor etc. of Baltimore,* 80 Md. 164;[2] *Austin* v. *Austin City Cemetery Assn.,* 87 Tex. 330,336.[3]) The burial of the dead in a public cemetery is a lawful and commendable object, and is not a nuisance, or presumably having any injurious tendency.  (*Los Angeles County* v. *Hollywood Cemetery Assn.,* 124 Cal. 344; 347;[4] *Lake View* v. *Rose Hill Cemetery Co.,* 70 Ill. 191, 195, 196;[5] Am. & Eng. Ency. of Law, title "Cemeteries"; Wood on Nuisances, sec. 3; *Monk* v. *Packard,* 71 Me. 309.[6])

Edward C. Harrison, *Amicus Curiæ,* also for Appellant.

[1] 33 Am. Rep. 239.
[2] 45 Am. St. Rep. 339.
[3] 47 Am. St. Rep. 114. .

[4] 71 Am. St. Rep. 75.
[5] 22 Am. Rep. 71.
[6] 36 Am. Rep. 315.

Franklin K. Lane, City Attorney, R. M. Sims, Assistant City Attorney, and Garret W. McEnerney, for Respondents.

It is a well-settled rule of law that cemetery associations and owners of cemetery lots hold the same subject to the right of the city to prohibit further burials within the cemetery, and that under such power as it possesses the city and county of San Francisco has the right to prohibit further burials. (*Ex parte Bohen,* 115 Cal. 372, 374, 375; *Los Angeles County* v. *Hollywood Cemetery Assn.,* 124 Cal. 344;[1] *Coates* v. *Mayor,* 7 Cow. 584; *Brick Church* v. *Mayor,* 5 Cow. 538; *Kincaid's Appeal,* 66 Pa. St. 411;[2] *Campbell* v. *City of Kansas,* 102 Mo. 326; *Humphreys* v. *Front-Street Methodist etc. Church,* 109 N. C. 132; *Went* v. *Methodist Church,* 80 Hun, 266; *People* v. *Pratt,* 129 N. Y. 68; *Young* v. *Commissioners,* 51 Fed. 585; *Cemetery Assn.* v. *Railway Assn.,* 121 Ill. 199; *Page* v. *Symonds,* 63 N. H. 17.[3]) The validity of the ordinance must be determined from its face alone. (*Los Angeles County* v. *Hollywood Cemetery Assn.,* 124 Cal. 344;[1] *Ex parte Tuttle,* 91 Cal. 591; Dillon on Municipal Corporations, sec. 327; *Merced County* v. *Fleming,* 111 Cal. 46, 50.) Equity will not restrain the enforcement of a penal ordinance. (*State* v. *Wood,* 155 Mo. 448; *Paulk* v. *Mayor etc. of Sycamore,* 104 Ga. 24;[4] *City of Bainbridge* v. *Reynolds,* 111 Ga. 758; *St. Peter's Church* v. *Washington,* 109 N. C. 21; *Chicago etc. R. R. Co.* v. *City of Ottawa,* 148 Ill. 397, 401; *City of Denver* v. *Beede,* 25 Colo. 172; *Ewing* v. *Webster City,* 103 Iowa, 226; *Hottinger* v. *City of New Orleans,* 42 La. Ann. 629; *Nashville etc. Ry. Co.* v. *City of Attalla,* 118 Ala. 362; *New Home etc. Co.* v. *Fletcher,* 44 Ark. 139; *Creighton* v. *Dahmer,* 70 Miss. 602;[5] *Wallack* v. *Society etc.,* 67 N. Y. 23; *Hemsley* v. *Myers,* 45 Fed. 283, 287; *Fitts* v. *McGee,* 172 U. S. 516, 531.) An injunction will not lie to prevent the enforcement of an alleged illegal ordinance prohibiting burials within the city limits. (*Wardens* v. *Washington,* 109 N. C. 21?) Property rights are held subject to the exercise of the police power. (*Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659; *Stone*

---

[1] 71 Am. St. Rep. 75.

[2] 5 Am. Rep. 377.

[3] 56 Am. Rep. 481.

[4] 69 Am. St. Rep. 128.

[5] 35 Am. St. Rep. 666, and note.

v. *Mississippi*, 101 U. S. 814; *Mugler* v. *Kansas*, 123 U. S. 623; *Douglas* v. *Kentucky*, 168 U. S. 488; *Chicago etc. R. R. Co.* v. *Nebraska*, 170 U. S. 57; *Barbier* v. *Connolly*, 113 U. S. 27; *Holden* v. *Hardy*, 169 U. S. 366.) The city and county of San Francisco has a constitutional grant of police power. (Const., art. XI, sec. 11; *Ex parte Roach*, 104 Cal. 272, 276; *Ex parte Campbell*, 74 Cal. 23.[1]) The police power is not confined to questions of nuisance. (*Ex parte Lacey*, 108 Cal. 326;[2] *Ex parte Shrader*, 33 Cal. 284.) The legislative body has power to determine the question of reasonableness as a question of fact, and its determination is conclusive. (*Ex parte Shrader*, 33 Cal. 279, 284; *Ex parte Tuttle*, 91 Cal. 591; *Johnson* v. *Simonton*, 43 Cal. 242, 249; *Ex parte Lacey*, 108 Cal. 326, 328;[3] *Ex parte Chency*, 90 Cal. 617, 620; *Vanderhurst* v. *Tholcke*, 113 Cal. 147, 150; *Los Angeles County* v. *Hollywood Cemetery Assn.*, 124 Cal. 344, 348;[4] *Soon Hing* v. *Crowley*, 113 U. S. 703, 716.)

SHAW, J.—This is an action to declare void an ordinance passed by the board of supervisors of the city and county of San Francisco and to enjoin the city and county authorities from enforcing the same by criminal prosecutions against the plaintiffs and others. After the filing of the answer, the court, on motion of the defendants, gave judgment on the pleadings against the plaintiffs, from which the plaintiffs appeal. The determination of the case, therefore, depends on the facts set forth in the complaint, which for the purposes of the decision, and so far as they are properly pleaded and are material, must be taken as true.

The ordinance in question declares that "it shall be unlawful for any person, association, or corporation, from and after the first day of August, 1901, to bury or inter, or cause to be interred or buried, the dead body of any person in any cemetery, graveyard, or other place within the city and county of San Francisco, exclusive of those portions thereof" belonging to the United States. It further provides that any person violating its provisions shall upon conviction be fined not less than one hundred dollars nor more than five hundred dollars,

[1] 5 Am. St. Rep. 418.
[2] 49 Am. St. Rep. 90.
[3] 49 Am. St. Rep. 93.
[4] 71 Am. St. Rep. 75.

or by imprisonment not exceeding six months, or by both such fine and imprisonment.

The two corporations plaintiff each owns a tract of land set apart and dedicated for use as a cemetery, and have been using the same for that purpose for upwards of thirty years. The cemeteries are divided into small lots for sale to private persons, to be used for burial purposes. Many of the lots have been so sold and used, and many others have not been sold or used, and are still held by the respective corporations for sale for such purpose. The plaintiff Plageman is the owner of one of the lots in the Odd Fellows' Cemetery, sold to him for burial purposes, and yet capable of having one or more bodies interred therein.

The ordinance in question was manifestly passed in the exercise of the police power given to the city and county by the constitution. Article XI (sec. 11) provides that, "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

The city charter provides (subd. 1, sec. 1, chap. 2, art. II) that "The board of supervisors shall have power: 1. To ordain, make, and enforce within the limits of the city and county all *necessary* local, police, sanitary, and other laws and regulations." The insertion of the word "necessary" in the grant of power contained in the charter does not limit or restrict the power given to the city by the constitution. The city charter in municipal affairs is paramount to general laws, but it cannot be superior to the constitution itself, and nothing contained in such a charter can in any way affect a grant of power conferred by the constitution. All the legislative power of the city is by the charter vested in the board of supervisors (art. II, chap. 1, sec. 1). By virtue of this clause the constitutional grant of the police powers of the state to the city goes directly to and vests in the board, which thereby becomes possessed of the right to exercise within the city limits the entire police power of the state, subject only to the control of general laws.

A number of cases are cited by the appellant from other states bearing upon the question of the police powers of cities or towns under special and limited grants contained in their

respective charters. Generally speaking, these authorities have no application to the case in hand. The power conferred by the constitution in this respect, subject to the two exceptions, that it is local to the city and that it is subject to general laws, is as broad as that of the legislature itself.

Many cases are also cited upon the proposition contended for by appellant that the power of the board of supervisors to make and enforce police regulations is confined to the regulation or suppression of those things which the law declares to be nuisances in themselves, and that it is not within the power of the board to declare an act or a thing a nuisance which is not so in fact or has not been declared to be such by the decision of some court acting with reference to the particular act or thing. Neither of these cases is authority in this state under the police power granted by the constitution. The exercise of this power is not limited to the regulation of such things as have already become nuisances or have been declared to be such by the judgment of a court. "The power to regulate or prohibit conferred upon the board of supervisors not only includes nuisances, but extends to everything expedient for the preservation of the public health, and the prevention of contagious diseases." (*Ex parte Shrader,* 33 Cal. 284.) This was said with reference to a health regulation. The power, however, includes the right to make regulations concerning other things besides those pertaining to health. The decisions of this court show that ordinances have been upheld in many cases prohibiting things which could not be said to be nuisances *per se,* and which had not been declared to be such by any court. As instances of the exercise of such powers, it has been held that it includes the right to prohibit slaughterhouses, the feeding of swill-slop to cows, the throwing of rubbish, garbage, etc., except in certain designated places, the keeping of more than two cows within certain limits, the erection of wooden buildings, and the maintenance of carpet-beating establishments. (*Ex parte Shrader,* 33 Cal. 284; *Johnson* v. *Simonton,* 43 Cal. 242; *Ex parte Casinello,* 62 Cal. 538; *Ex parte Heilbron,* 65 Cal. 609; *Ex parte Fiske,* 72 Cal. 125; *In re Linehan,* 72 Cal. 114; *McCloskey* v. *Kreling,* 76 Cal. 511; *Ex parte Lacey,* 108 Cal. 326.[1]) Whenever a thing or act is

[1] 49 Am. St. Rep. 93.

of such a nature that it may become a nuisance, or may be injurious to the public health, if not suppressed or regulated, the legislative body may, in the exercise of its police powers, make and enforce ordinances to regulate or prohibit such act or thing, although it may never have been offensive or injurious in the past. It is well settled that cemeteries in cities are subject to regulation or suppression by the exercise of these police powers. (*People* v. *Pratt,* 129 N. Y. 68; *Presbyterian Church* v. *Mayor etc.,* 5 Cow. 538; *Coates* v. *Mayor etc.,* 7 Cow. 585.; *Kincaid's Appeal,* 66 Pa. St. 411;[1] *Sohier* v. *Trinity Church,* 109 Mass. 22; *City Council* v. *Wentworth-Street Baptist Church,* 4 Strob. 309; *Humphreys* v. *Front-Street Methodist etc. Church,* 109 N. C. 132.)

We do not think the ordinance in question is in conflict with any general law. The provisions of the act of 1859 for the incorporation of rural cemetery associations (Stats. 1859, 281), which are substantially re-enacted in sections 608 to 616 of the Civil Code, are cited as general laws conflicting with this ordinance. Section 4 of the act and section 608 of the Civil Code give such corporations power to take and hold, within the county, lands not exceeding three hundred and twenty acres in extent, to be held and occupied exclusively for cemeteries. This is a grant of power to such corporations to own property, and the limitation of the amount that may be acquired, and of the uses to which such property may be devoted.

There is nothing in these laws purporting to be an exercise of the police power of the state with respect to the public health, safety, or comfort. They were manifestly not intended to operate upon, or in any manner restrict, the authority of municipal corporations, in the exercise of police power, to regulate and control the location and maintenance of cemeteries. They were simply designed to enable persons to associate themselves together as corporations, and by that means, and in the mode prescribed by the law, to do what might have been done by them as individuals without becoming subject to the restrictions contained in the law. It is not to be supposed that it was intended that these corporations should have greater privileges than natural persons, and be free from control by police regulations designed to preserve public health and promote the general welfare.

[1] 5 Am. Rep. 377.

Neither is there anything in the Penal Code which materially conflicts with, or prevents the enforcement of, the ordinance. Section 292 merely declares that the duty of burial of the body of a deceased person devolves upon the persons therein specified. Section 297 forbids the burial of a body within San Francisco, except in some cemetery already existing under the laws of the state or thereafter established by the board of supervisors. This is a negative provision, and does not by inference confer the right to bury in the excepted cemeteries. That right was pre-existing, but was subject to be taken away by police regulations, and remained subject to that condition after the enactment of section 297 to the same extent as before. So far as the ordinance forbids burials outside of those cemeteries, it is in strict accord with section 297; and so far as it forbids burials within those cemeteries, it is not in conflict, for that section gives no right to do that and makes no provision relating thereto. It may be that the law supersedes the ordinance, so far as the territory embraced is the same in both, and that the ordinance is to that extent inoperative. If so, the only result will be that for the offense of burial in any place other than an established cemetery, the prosecution and punishment must be under the state law, and for a burial within such cemeteries, it must be under the ordinance which as to such territory is in force and effect. The slight difference in the punishment provided is, in view of this result, entirely immaterial.

It is contended by the appellants that while it may be true that cemeteries are subject to regulation by the police power, still it is a cardinal principle applicable to such powers that any given exercise of them must be reasonable under all the circumstances appearing in the case. There are some allegations in the complaint intended to show that this particular ordinance is unreasonable. It is well settled, however, that, except where the court can see, in the light of facts properly brought to its knowledge, that a given police regulation has no just relation to the object which it purports to carry out, and no reasonable tendency to preserve or protect the public safety, health, comfort, or morals, the decision of the legislative body as to the necessity or reasonableness of the regulation in question is conclusive. (*Commonwealth* v. *Alger*, **7**

Cush. 104; *Ex parte Andrews,* 18 Cal. 679; *Ex parte Shrader,* 33 Cal. 284; *Johnson* v. *Simonton,* 43 Cal. 242; *In re Linehan,* 72 Cal. 114; *Ex parte Cheney,* 90 Cal. 617; *Ex parte Tuttle,* 91 Cal. 589; *Vanderhurst* v. *Tholcke,* 113 Cal. 147.) The complaint alleges that within the limits of the city are many large tracts of vacant land of more than three thousand acres each, and aggregating more than sixty thousand acres, not contiguous to dwellings, and remote from the thickly inhabited parts of the city, which are adapted for use as cemeteries. Notwithstanding these allegations, the court is bound to take judicial notice of the fact that the entire area of the city and county of San Francisco is only twenty-six thousand, seven hundred and twenty acres; that a large part of this area is already covered with buildings, that the city is rapidly increasing in population, and that the cemeteries in question are in the midst of the city and surrounded by dwellings. Also, the court knows that the general law has, for nearly thirty years past, prohibited, and does now prohibit, burials in the city and county, except in cemeteries now established. The ordinance in question, in its practical application, does no more than prohibit burials within those cemeteries. Other facts and circumstances may exist bearing on the subject. It has been said that if there is a doubt as to the unreasonableness of an ordinance, ''the fact that this doubt exists is sufficient reason for the court to decline to adjudge the ordinance invalid.'' (*In re Wilshire,* 103 Fed. 620.) The court, therefore, cannot say as matter of law that the conditions are not such as to make it reasonable to prohibit the further burial of the dead within the city limits. In the enactment of police regulations the legislative body is not confined to present conditions alone, but may look to the future and make such provisions as may be reasonably expected to be necessary to promote and preserve the public health and welfare in the immediate growth and progress of the city.

It was intimated in the case of *Los Angeles County* v. *Hollywood Cemetery Assn.,* 124 Cal. 344,[1] that an ordinance of Los Angeles County, forbidding under certain conditions the establishment of cemeteries anywhere within the limits of that county, was not reasonable. This case, however, is no

---

[1] 71 Am. St. Rep. 75.

precedent for the one now before the court. The county of Los Angeles is one of the largest counties of the state, and has within its limits many square miles of territory which are not only not thickly populated, but in which there are scarcely any inhabitants at all. It might be that an ordinance forbidding the establishment of cemeteries within such thinly populated districts as many portions of that county are known to be would be held to be unreasonable, but as to this we express no opinion. San Francisco, as we have seen, is, in most particulars affecting the question, the very opposite of many portions of Los Angeles County. The case of *Wygant* v. *McLauchlan*, 39 Or. 429, is cited to the point that this ordinance is unreasonable in this respect. It is sufficient to say that we disapprove of that case so far as it seems to hold that a court should declare an ordinance forbidding cemeteries in a city unreasonable wherever it appears that there are vacant tracts of land several hundred acres in extent within the city limits on which cemeteries could be established. Each case of this character must depend largely on its own special circumstances. There are many other facts and circumstances which may have affected the legislative judgment as to the advisability of such an ordinance, and the court cannot say that they did not exist in the case at bar.

It is settled law that all property is held subject to the exercise of police power, and that the provisions of the constitution forbidding laws impairing the obligations of contracts, and declaring that property shall not be taken without due process of law, have no application in such cases. (*Butchers' Union etc. Co.* v. *Crescent City etc. Co.*, 111 U. S. 746; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; *New Orleans Gaslight Co.* v. *Louisiana Light etc. Co.*, 115 U. S. 672; *Barbier* v. *Connolly*, 113 U. S. 27; *Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 1; *Boyd* v. *Alabama*, 94 U. S. 645; *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 699; *Ex parte Lacey*, 108 Cal. 326.[1]) There is no ground upon which we can hold the ordinance in question to be invalid.

It is alleged that the ordinance was passed for private purposes and from improper motives. There is nothing on the face of the ordinance to show this, and no inquiry or proof of

[1] 49 Am. St. Rep. 93.

extraneous facts to show the motive impelling the legislative body to pass an ordinance can be allowed. (*Soon Hing* v. *Crowley,* 113 U. S. 703; Cooley on Constitutional Limitations, 6th ed., 220.)

Counsel on both sides have also discussed at great length and with much learning and ability the question whether or not, conceding the ordinance to be invalid, a court of equity will entertain an action to enjoin a municipal corporation from enforcing ordinances prescribing punishment for misdemeanors. As we have reached the conclusion that the ordinance in question is a valid exercise of the police power, it follows that it will not be necessary to consider this question.

It is therefore ordered that the judgment be affirmed.

McFarland, J., Angellotti, J., and Lorigan, J., concurred.

HENSHAW, J., concurring.—I concur in the judgment. The power of the authorities to prohibit burials in established cemeteries within the corporate limits of a city is unquestioned. That power, however, is not to be exercised arbitrarily, but is to be reasonably employed for the accomplishment of the appropriate end in view,—the sanitary welfare of the community, whose health is or may be threatened or endangered by the continuance of burials. Taking notice of the limited area of the city and county of San Francisco, its great and constantly increasing population, and the location of the plaintiffs' cemeteries, it will not be said that the prohibiting of future burials within them is not demanded as a sound sanitary measure. The ordinance in question, therefore, at least to the extent to which it seeks to accomplish this end, is valid, and this determination disposes of all of the asserted rights of the plaintiffs.

I am not able, however, to agree with what seems to be the view of the prevailing opinion, that in its fullest scope the ordinance is reasonable and legal. It prohibits burials, not alone in all existing cemeteries, but also in "all other places within the city and county." It is the duty of the authorities of a county to secure to its inhabitants places of burial for their dead, and it is the corresponding right of the inhabitants to bury their dead with as little inconvenience and expense as the circumstances will permit. The county author-

ities, therefore, may not arbitrarily refuse to permit the burial of the dead within the county limits, and any ordinance which purports so to do must be, as to its reasonableness, the subject of judicial review. Otherwise, if one county might, all might, and there would be imposed upon the inhabitants of the state the forced necessity of cremations, burials at sea, or other modes of disposition repugnant to their feelings and repellent to their religious views. It must follow, therefore, that so sweeping an ordinance as the one under consideration is, in a proper case, subject to judicial consideration as to its reasonableness or unreasonableness. It is pleaded in the complaint that there are within the limits of the city and county of San Francisco tracts of land suitable for cemetery purposes, which could be used as such without in the slightest degree endangering the public health. The question thus presented is either one calling for evidence or one of which the court takes judicial notice. If it be the former, the allegation was proper. If it be the latter, then judicial notice may be taken of the fact that there are tracts of land within the corporate limits of the city and county, with direct drainage to the ocean, which could be employed for cemetery purposes without in the least threatening the sanitary well-being of the community. True, there are no cemeteries established, or so far sought to be established, upon any such tracts of land, and the question, therefore, becomes unimportant for decision in this case. Its determination here would in no way affect the rights of these plaintiffs, but it may become of consequence in the future, and should not, therefore, I think, be thus decided here where none of the rights of the plaintiffs are involved in its determination.

BEATTY, C. J., concurring.—I concur in the judgment and generally in the opinion of Justice Shaw. I think, however, the opinion states one or two propositions more broadly than necessary for the decision and in terms which hereafter may be found to require some qualification. For the purposes of this case it is sufficient to say that the prohibition of future burials within city limits is a valid exercise of the powers vested in the governing body of a municipal corporation, and to determine the occasion for the exercise of such powers is a matter committed to their discretion by the constitution of the state. With the exercise of such discretion the courts cannot

and ought not to interfere. The ordinance being valid on its face, the facts alleged in the complaint for the purpose of invalidating it were not admitted by the motion for judgment on the pleadings. That motion, like a demurrer, admits only such facts as the plaintiff would be allowed to prove, and admits no legal conclusions.

The difference between this ordinance and a similar ordinance passed by a county is manifest. The counties in the aggregate embrace all the territory of the state. If one county could forbid burials anywhere within its limits, every other county could do the same, and so by a succession of local ordinances the general laws allowing and enjoining burials could be defeated. But as to cities and towns the case is different (and San Francisco is none the less a city because the boundaries of the county are identical with those of the city). Cities and towns are of restricted area, embracing in the aggregate but a small fraction of territory of the state, and the density of population within their comparatively narrow limits is a reason generally if not universally recognized for prohibiting the burial of the dead in such close proximity to the habitations of the living.