Ringelstein v. City of Chicago.

---

## John Ringelstein v. City of Chicago.

### Gen. No. 12,722,

1. ORDINANCE—*how reasonableness of, to be determined.* As the presumptions of law are all in favor of the reasonableness of an ordinance, these presumptions to be overcome must be rebutted by the proofs—or the ordinance upon its face must clearly appear to be unreasonable, before the court is authorized to interpose its authority in holding such ordinance to be void as unreasonable.

2. ORDINANCE—*with respect to keeping and feeding cows, held valid.* A particular ordinance set forth in this opinion regulating the keeping and feeding of cows in the city of Chicago, is held valid, as clearly within the exercise of the police power granted by the State to the city council.

Prosecution under municipal ordinance. Appeal from the Criminal Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed October 8, 1906.

FRANK O. CAMPE and ALBERT B. GEORGE, for appellant.

HOWARD S. TAYLOR and JAMES DONAHOE, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

John Ringelstein, appellant, was convicted and fined $25 in the Criminal Court of Cook county for a violation of section 964 of the Municipal Code of Chicago, which provides:

"No person or persons, firm or corporation, shall keep or have in his or her possession any slops or refuse of any distillery, brewery or vinegar factory, or any similar slops, mash or refuse, or food that has been subject to fermentation, for the purpose of feeding the same to any milch cow or cows. Each day's failure to comply with this section shall subject the offender to a fine of not less than twenty-five dollars."

It is admitted in the record by appellant that the article made contraband by the provision of the code cited was found upon the premises of appellant and used for food for milch cows there kept by him.

There is no dispute about the facts. The questions raised are ones of law only. Appellant contends that section 964, *supra,* is unconstitutional, in that it deprives appellant of his right of property, without due process of law. If this provision of the Municipal Code can be sustained, it must find its support in the exercise of the police power in furtherance of the public health and the protection of the citizen against disease.

The common council had authority to pass the

ordinance in question: First, by the express author-
ity conferred by subdn. 66, sec. 1, art. 5, chap. 24, R.
S., Starr & Curtis, which provides, "The city coun-
cil shall have power   *   *   *   to   *   *   *   pass and
enforce all necessary police ordinances,"and by subdn.
78, *supra,* "to do all acts, make all regulations which
may be necessary or ·expedient for the promotion of
health or the suppression of disease," and second,
without such express power the common council have
the right by implication to pass such an ordinance in
the exercise of the police power.

As said in Gundling v. City of Chicago, 176 Ill. 340,
"The preservation of the public health being indis-
pensable to the existence of a municipal corporation,
the power to enact ordinances to that end is inherent
in a municipality," and as also said by the Supreme
Court of Minnesota in State v. Nelson, 66 Minn. 166,
"any police regulations that did not provide means
for insuring the wholesomeness of milk   *   *   *   for
sale and consumption would furnish very inadequate
protection to the lives and health of the citizens."

By the common law it is axiomatic the duty of gov-
ernment to conserve the public health. 1 Black Com.
132 & 133, Sharswood's Edn. "The preservation of
health is one of the paramount objects of govern-
ment." "It belongs to the police power   *   *   *
subject to the proper exercise of which, either by the
state legislature directly or by public corporations, to
which the legislature may delegate it, every citizen
holds his property." Dillon on Municipal Corp'ns.,
sec. 93.

It is a fact of common knowledge that the keeping
of cows in cramped and narrow quarters in a densely
populated municipality, without the opportunity of
open air exercise, impoverishes the quality of the milk
of cows so kept, and when to this detrimental environ-
ment is added the deprivation of nature's food, gath-
ered from green pastures, upon which their kind have

been pastured from earliest recorded time, and un-
wholesome swill and slops fermented in vinegar fac-
tories and breweries are fed to cows so kept, it be-
comes evident that the product of cows so fed and
housed is more than liable to be unfit for human con-
sumption, and milk from such animals especially unfit
for young children; and as said in Johnson v. Simon-
ton, 43 Cal. 242, "If it indeed be a fact that the milk
of cows fed in whole or in part upon still slops is un-
wholesome as human food, there can be no doubt of
either the authority or duty of the board to enact the
ordinance in question." The validity of an ordinance
—akin to the one now before this court for consti-
tutional interpretation—of the city of San Francisco
was challenged in Johnson v. Simonton, *supra*.

Appellant challenges the reasonableness of this ordi-
nance, contending that whether or not it is reasonable
is a question of fact and not of law, and that the
evidence received, when considered together with evi-
dence proffered and erroneously rejected against ap-
pellant's objection, establishes the unreasonableness
of the ordinance.

As the presumptions of the law are in favor of the
reasonableness of the ordinance, these presumptions
to be overcome must be rebutted by the proofs—or
the ordinance upon its face must clearly appear to be
unreasonable, before the court is authorized to inter-
pose its authority in holding such ordinance to be void
as unreasonable. In People ex rel. v. Cregier, 138
Ill. 401, the court said: "It is therefore incumbent
upon any one who seeks to have them" (the ordi-
nances) "set aside as unreasonable, to point out or
show affirmatively wherein such unreasonableness
consists."

In substance the record shows, on the testimony of
appellant, that appellant keeps continuously about six-
teen cows stabled in a barn thirty-three feet long by
twenty feet wide, without bedding of any kind, and

that he feeds them on vinegar slops and keeps each cow in this way about eight or nine months, without exercise. Merrillat, a veterinary surgeon, admits that want of exercise is detrimental to the health of the animals, while Delafontaine, testifying on the part of appellant, states "that there is nothing inherently harmful in vinegar slops as a food for milch cows," yet on cross-examination he admits that vinegar slops will ferment and putrify upon exposure to the air in sufficient warmth and not too much light, that there are then present various products more or less poisonous, including toxines. On the part of the city, Doctor Joseph F. Biehn testifies that poison of various natures, including ptomaine, are found in milk from cattle fed on vinegar slops; that such is injurious to the health of people who do drink it, producing intestinal diarrhoea in young children; that an examination of milk taken from cows fed on vinegar slops developed the fact that it was not wholesome. This testimony, of itself, abundantly establishes both the reasonableness of the ordinance and its necessity and that the product of appellant's cows is injurious to health and provocative of acute disease.

In La Hote v. New Orleans, 177 U. S. 587, on p. 589, the Federal Supreme Court adopted in its opinion the dicta of Dillon on Municipal Corpns., sec. 141, that "Laws and ordinances relating to the comfort, health, convenience, good order and general welfare of the inhabitants are comprehensively styled 'police laws or regulations.' It is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual rights, are not unconstitutional."

It is well said in Gundling v. City of Chicago, *supra,* p. 348-9: "The regulation of the police power is hardly susceptible of exact definition, as the exigencies of each case are varying and the cases are innumerable where the health of the inhabitants of the

municipality may be in some degree endangered. When the city council considers some occupation or thing dangerous to the health of the community, and in the exercise of its discretion passes an ordinance to prevent such a danger, it is the policy of the law to favor such legislation as being humane and essential to the preservation and protection of the community. Municipalities are allowed a greater degree of liberty of legislation in this direction than any other. The necessity for action is often more urgent and the consequences of neglect are more detrimental to the public good in this than any other form of local evil."

People v. Bowen, 74 N. E. Rep. 489, cited by counsel in support of his contention, on consideration appears to us to have quite the contrary effect. Bowen was dealt with and fined in the sum of $100 for violating section 12, as amended, of the agricultural law of the State of New York, being similar to the ordinance here in question. While the judgment was reversed, it was for error of fact and lack of proof of a fact made essential of proof by the People to warrant Bowen's being disciplined under section 12, *supra*, which he was charged with violating. The whole subject of the constitutionality of section 12, *supra*, as amended, was both argued and passed upon by the court, and while Mr. Justice Werner filed an exhaustive dissenting opinion in which Mr. Justice Haight concurred, the whole bench of the Court of Appeals unanimously held that the law under which Bowen was prosecuted was constitutional "as a proper exercise of the police power in order to prevent fraud and preserve health." See p. 492.

Exhibits A and B, offered by appellant and excluded by the court, are of the same character of evidence as the report of the board of health held to constitute hearsay evidence in City of Montezuma v. Minor, 73 Ga. 484, and inimical to the same objection. The ordinance of the city of Chicago regulating the keeping

and feeding of cows in question, is clearly an exercise of the police power by the common council delegated to it by the express words of the statute *supra,* and valid and binding as a law of that municipality, and is in no respect violative of any provision of the organic law, state or federal. It is an ordinance necessary for the preservation of the health of the people and to guard against disease.

The Criminal Court is guiltless of error in its judgment, and its judgment is therefore affirmed.

*Affirmed.*