[Crim. No. 2515.  In Bank.—April 20, 1923.]

In the Matter of the Application of MRS. FRANK MATHEWS for a Writ of Habeas Corpus.

[1] MUNICIPAL CORPORATIONS—PREVENTION OF NUISANCES—POWER OF CITY.—A city has the power to pass general police regulations to prevent nuisances, and such power is not limited to the suppression of those things which are nuisances *per se* within the meaning of section 370 of the Penal Code and sections 3479 and 3480 of the Civil Code.

[2] ID.—KEEPING AND MAINTENANCE OF GOATS—CITY ORDINANCE PROHIBITING — NUISANCES—JURISDICTION.—Where an ordinance, entitled "An ordinance . . . defining nuisances and prohibiting their maintenance," among other things, and in a particular section thereof declares it to be a nuisance and unlawful for any person to keep or maintain any goat, or prescribed number of goats, within graduated distances of any dwelling-house other than that occupied by such person, and that it shall be unlawful to keep or maintain any male goat exceeding the age of six months within the city limits, the mere fact that in the ordinance the subject matter is referred to as a nuisance cannot invalidate the enactment if the city had the power to pass it, and it is to be regarded as a provision that the keeping of goats at any point within the city limits is inimical to the public welfare unless the sanitary regulations provided are complied with, and, under the section in question even when kept as required by the ordinance, they may be obnoxious if kept within the stated distances of dwelling-houses.

[3] ID.—KEEPING OF ANIMALS—MUNICIPAL REGULATION.—The keeping of animals may be a proper subject of municipal regulation, and by such regulation the number of animals which may be kept may be limited.

[4] ID. — KEEPING OF GOATS — NUISANCE—REGULATION BY CITY.—It cannot be said that, when kept in numbers in a city, female goats are so incapable of offending the senses and affecting the health and comfort of the residents and are so unlikely to interfere with the public welfare that they are beyond the power of regulation of a city government.

[5] ID.—ORDINANCE PRESCRIBING AREAS WITHIN WHICH GOATS MAY NOT BE KEPT—REASONABLENESS OF.—A city ordinance declaring it to be a nuisance and unlawful "for any person, firm, or cor-

---

1. Power of municipality to regulate keeping of animals as nuisance, notes, 38 L. R. A. 332; 39 L. R. A. (N. S.) 266.

poration to keep or maintain any goat within fifty (50) feet of any dwelling-house other than that occupied by him or it, or more than two (2) goats within one hundred (100) feet of any dwelling-house other than that occupied by him or it, or more than four goats within three hundred (300) feet of any dwelling-house other than that occupied by him or it, or more than five (5) goats within one thousand (1000) feet of any dwelling-house other than that occupied by him or it," is not unreasonable nor objectionable in that it in effect makes each dwelling-house the center of a zone within which an excessive number of goats may not be kept; nor is such ordinance unreasonable upon the asserted ground that the distances prescribed therein are entirely disproportionate to the number of goats kept.

[6] ID. — REASONABLENESS OF DISTANCES — POWER OF LEGISLATIVE BODY.—Such an ordinance may not be held invalid unless the distances therein prescribed are clearly unreasonable, the question of reasonableness being primarily one for the legislative body.

[7] ID.—OBJECTIONABLE CONDITIONS—SUPPRESSION AND REGULATION— POWER OF CITY.—A city has the right to suppress as well as to regulate objectionable conditions in the community.

[8] ID.—KEEPING OF GOATS BY OWNER WITHIN PRESCRIBED DISTANCE— UNIFORMITY AND REASONABLENESS OF ORDINANCE.—The fact that the ordinance in question does not preclude the goat owner from keeping the animals within the prescribed distance of his own home does not impair its uniformity or reasonableness.

[9] ID.—OWNERSHIP OF GOATS BY SEVERAL PERSONS—CONSTRUCTION OF ORDINANCE.—While such an ordinance provides "it shall be unlawful for any person, firm, or corporation to keep or maintain any goat within" prescribed distances from another's dwelling, it may cover a case where the goats are owned by several persons in common.

[10] ID.—REMOTE CONTINGENCIES—NOT COVERED BY ORDINANCE—EF-FECT UPON VALIDITY.—Even if such an ordinance is defective in not providing for the possibility that an allowable number of goats may be kept within a certain distance on one side of a given person's dwelling and an allowable number within the same distance on the other side, making the total number within the area more than could be kept by one person, it is not to be held invalid for that reason, as the board of directors of the city cannot be expected to have guarded against every contingency, and the likelihood of such a situation arising may be very remote and the reasonableness of a police regulation is not to be tested by its possible application to extreme cases. The means adopted in the ordinance are appreciably related to the end sought to be accomplished, which is all that is required.

PROCEEDING on Habeas Corpus to secure release from custody for violation of city ordinance prohibiting keeping and maintenance of goats. Writ discharged.

The facts are stated in the opinion of the court.

J. G. Rossiter and B. M. Marble for Petitioner.

James H. Howard, City Attorney, and Leonard L. Riccardi, City Prosecuting Attorney, for Respondent.

LAWLOR, J.—Petitioner, Mrs. Frank Mathews, was convicted of a violation of section 14 (c) of Ordinance No. 1940 of the city of Pasadena, entitled "An ordinance of the city of Pasadena defining nuisances and prohibiting their maintenance." Section 14 (c) provides: "It is hereby declared to be a nuisance and it shall be unlawful for any person, firm, or corporation to keep or maintain any goat within (50) feet of any dwelling-house other than that occupied by him or it, or more than two (2) goats within one hundred (100) feet of any dwelling-house other than that occupied by him or it, or more than four goats within three hundred (300) feet of any dwelling-house other than that occupied by him or it, or more than five (5) goats within one thousand (1000) feet of any dwelling-house other than that occupied by him or it.

"(cc) It shall be unlawful to keep or maintain any male goat exceeding the age of six months within the limits of the city of Pasadena."

Petitioner's alleged offense consisted of keeping more than five goats within one thousand feet of a dwelling-house other than her own. Pursuant to her application therefor, a writ of *habeas corpus* was issued, directed to the chief of police of the city of Pasadena, and it is now claimed the section of the ordinance under which she was convicted is invalid.

Section 11, article XI, of the constitution provides that "any county, city, town or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws." The ordinance involved was obviously adopted under the authority conferred by this section, as it also prohibits within the city limits the maintenance of such places as slaughter-

houses, filthy stables or yards, laundries unconnected with sewers, the pollution of water, and regulates the removal of garbage, the operation of rock-crushers and the keeping of fowls and animals, including dogs and cats kept for breeding purposes, rabbits, cattle, horses, and hogs. Section 5 provides for the regular cleaning and care of premises where stock, including goats, is kept, and section 21 (a) forbids the keeping of any noisy fowls or animals.

Petitioner first contends that the ordinance conflicts with the state law. She points out that by section 370 of the Penal Code and sections 3479 and 3480 of the Civil Code certain things have been declared to be nuisances, they being, in so far as is material here, anything which is injurious to the health, indecent, offensive to the senses, or which interferes with the comfortable enjoyment of life or property by any community, neighborhood, or considerable number of persons. It is insisted that a municipality is without authority to determine that a specific act is within the code definitions, such a question being a judicial and not a legislative one, and that the city of Pasadena, by providing regulations on the subject of keeping goats, has recognized that when so kept they are not a nuisance, that by the ordinance, which is designated as an act to define nuisances and prohibit their maintenance, it is attempted to bring the keeping of goats within the definition of a nuisance. [1] A city clearly has power to pass general police regulations to prevent nuisances, and such power is not limited to the suppression of those things which are nuisances *per se* within the meaning of the code sections. In *Odd Fellows' Cemetery Assn.* v. *San Francisco*, 140 Cal. 226, 231 [73 Pac. 987, 988], it is said that "The exercise of this [police] power is not limited to the regulation of such things as have already become nuisances or have been declared to be such by the judgment of a court. . . . The decisions of this court show that ordinances have been upheld in many cases prohibiting things which could not be said to be nuisances *per se*, and which had not been declared to be such by any court. . . . Whenever a thing or act is of such a nature that it may become a nuisance, or may be injurious to the public health, if not suppressed or regulated, the legislative body may, in the exercise of its police powers, make and enforce ordinances to regulate or prohibit such act or thing, although it may

never have been offensive or injurious in the past." In *Ex parte Shrader*, 33 Cal. 279, 284, it is said that "The power to regulate or prohibit conferred upon the board of supervisors not only includes nuisances, but extends to everything expedient for the preservation of the public health, and the prevention of contagious diseases." (See, also, *In re Lacey*, 108 Cal. 326 [49 Am. St. Rep. 93, 38 L. R. A. 640, 41 Pac. 411].) **[2]** The mere fact that in the ordinance the subject matter is referred to as a nuisance cannot invalidate the enactment if the city had the power to pass it (*Ex parte Johnson*, 47 Cal. App. 465 [190 Pac. 852]), and in our opinion it is to be regarded as a provision that the keeping of goats at any point within the city limits is inimical to the public welfare unless the sanitary regulations provided are complied with, and, under section 14 (c), that even when kept as required by the ordinance they may be obnoxious if kept within the prescribed distances from dwelling-houses.

The question presented here is whether the keeping of goats is a proper subject of municipal regulation, and if so, whether the regulation in question is a reasonable one. In *Boyd* v. *City of Sierra Madre*, 41 Cal. App. 520, 527 [183 Pac. 230, 233], with respect to the power of a city to pass police regulations, it is declared: "Primarily, it is for the city's legislative body, clothed with police power by direct grant from the constitution, to determine when and what regulations are essential; and its determination in this regard, in view of its better knowledge of all the circumstances and the presumption that it is acting with due regard for the rights of all parties, will not be disturbed by the courts, unless it plainly can be seen that the regulation has no relation to the protection of health, safety, comfort, or well-being of the community, but is a clear invasion of personal or property rights under the guise of police regulation."

**[3]** That the keeping of animals may be a proper subject of municipal regulation, and that by such regulation the number of animals which may be kept may be limited, does not admit of question. (*In re Linehan*, 72 Cal. 114 [13 Pac. 170].) The board of directors of the city of Pasadena have deemed the presence of all male goats and the unrestricted keeping of herds of female goats in the city injurious to the welfare of the residents. Petitioner alleges that the keeping of milk goats is a large, growing, and

profitable industry, that such goats are not noisy, are not offensive to the senses and do not at all interfere with the comfortable enjoyment of life or property. In support of these contentions petitioner in her brief refers to many treatises on goats, which would be proper subjects of consideration by the board of directors, who are the sole judges of the expediency of the ordinance. No answer to the petition was filed, but respondent in its brief takes issue with these claims, stating that "The offensiveness of the goat lies in its persistent and nerve-racking bleat and in the foul odors which emanate from the animal and its abode, as ordinarily kept."

In our opinion petitioner's allegations are not conclusive of the question, in view of the strong presumption in favor of the validity of the ordinance. It was said in *Odd Fellows' Cemetery Assn.* v. *San Francisco, supra* (page 233), that "There are some allegations in the complaint intended to show that this particular ordinance is unreasonable. It is well settled, however, that, except where the court can see, in the light of facts properly brought to its knowledge, that a given police regulation has no just relation to the object which it purports to carry out, and no reasonable tendency to preserve or protect the public safety, health, comfort, or morals, the decision of the legislative body as to the necessity or reasonableness of the regulation in question is conclusive." (See, also, *Vanderhurst* v. *Tholcke,* 113 Cal. 147 [35 L. R. A. 267, 45 Pac. 266].)

It is a matter of common observation that the herding together of even the least offensive animals within a city may be conducive to noise, foul odors, and insect life, and may be a source of great annoyance and discomfort to persons residing in the vicinity. Assuming it to be a fact of which we may take judicial notice that female goats are, as claimed by petitioner, animals of high qualities, whose merits are underestimated by the public at large, still they might not be entirely free from all the characteristics which make other barnyard animals the proper subject of municipal regulation. [4] We cannot say that when kept in numbers in a city they are so incapable of offending the senses and affecting the health and comfort of the residents, and, that in the instance before us, are so unlikely to interfere with the pub-

lic welfare that they are beyond the power of regulation of a city government.

Petitioner affirms as a fact that the goat-keeping industry is increasing and is as yet undeveloped in this part of the country. If this be so, and the animals tend to interfere with the comfort and health of the community, it is a stronger reason why municipal authorities should regulate their maintenance before they become too numerous, if for no other reason than to prevent the growth within the city of an industry which may subsequently become a nuisance and necessarily be suppressed.

[5] The regulation, in our opinion, is not unreasonable. Petitioner's most serious objection is to its plan, which in effect makes each dwelling-house the center of a zone within which an excessive number of goats may not be kept. We see no objection to this method of determining what shall constitute such areas. A similar system was held valid in *State* v. *Hord,* 122 N. C. 1092 [65 Am. St. Rep. 743, 29 S. E. 952], which decision upheld an ordinance providing that no person should keep a hog-pen with a hog in it within one hundred yards of another's dwelling. (See, also, *In re Lacey,* 108 Cal. 326 [49 Am. St. Rep. 93, 38 L. R. A. 640, 41 Pac. 411].) In any city such a regulation would insure equal protection against the evil to all within its limits, and in a city built up irregularly, with a population unevenly scattered, a greater freedom would be accorded the inhabitants in the matter of keeping animals than by a general ordinance dividing the territory into business and residential districts, or by attempting to divide the city into definite areas in which goats might or might not be kept.

It is claimed by petitioner that the regulation in this instance is unreasonable in that the distances prescribed in the ordinance are entirely disproportionate to the number of goats kept. Thus it is pointed out that the distances provided in the case of six goats is three times that provided for the keeping of five. The objection to six goats may be but little greater than that to five, but in a regulation such as this some definite number must be fixed where a division is to be made. [6] The ordinance may not be held invalid unless the distances are clearly unreasonable, the question of reasonableness being primarily one for the legislative body. We cannot say that the distances up to three hundred feet

for the keeping of five goats are excessive, nor that they are unreasonable because they do not increase in direct ratio with the number of goats. Many things might enter into such a regulation, for example, the greater difficulty of properly caring for a larger number of goats. Petitioner especially objects to the distance of one thousand feet for six or more goats. Such an ordinance might have the effect of prohibiting the keeping of that number within the limits of the city, and certainly would within any but a sparsely settled neighborhood. [7] Such an objection is not tenable, for the city has the right to suppress as well as to regulate objectionable conditions in the community (*Fischer* v. *St. Louis,* 194 U. S. 361 [48 L. Ed. 1018, 24 Sup. Ct. Rep. 673; see, also, Rose's U. S. Notes]). The same result was held not to invalidate the ordinance in *State* v. *Hord, supra.*

[8] Nor does the fact that the ordinance does not preclude the goat owner from keeping the animals within the prescribed distance of his own home impair its uniformity or reasonableness. In *State* v. *Hord, supra,* it was said: "The object of the ordinance is not to prevent a man from injuring himself by keeping his hog pen too near his own house, for that is a matter he can remedy at will, but to protect the public against a nuisance which they have no power to prevent except through the authority of a town ordinance acting on the offender.

"A nuisance is to the public, or to others, and not an injury or annoyance which a person causes to himself and family. It is an anomaly that the defendant, who has disobeyed the ordinance forbidding him to commit a nuisance upon the public, should be complaining that the town did not go further and forbid him being a nuisance to himself. He could refrain from that without official help."

Finally, it is objected, first, that while it is made unlawful for one person to keep goats within the prescribed distance of another's dwelling, there is no objection if they are kept by several persons; and, second, that the operation of the law may also be defeated when an allowable number of goats are kept within a certain distance on one side of a given person's dwelling and an allowable number within the same distance on the other side, but the total number within the area is more than could be kept by one person. [9] Considering the first objection, we are of the opinion the

ordinance may be held to cover a case where the goats are owned by several persons in common. In giving effect to the ordinance the intention of the board of directors must necessarily be considered, and it was their evident intention to prevent the keeping of the prescribed number of goats in close proximity to dwelling-houses. Although the ordinance only refers to "any person, firm or corporation," it is entirely immaterial, so far as securing the desired result is concerned, whether the goats are owned by one person or by several.

In the codes of this state the word "person" includes "persons," for it is expressly declared that the singular shall include the plural. (Civ. Code, sec. 14; Code Civ. Proc., sec. 17; Pen. Code, sec. 7; Pol. Code, sec. 17.) No such definition is contained in the ordinance in question. When used in a statute, it would appear from the decisions that in the absence of an express declaration that it shall include the plural, "person" may or may not include "persons," according to the context. Thus in *People* v. *Croton Aqueduct Board*, 26 Barb. (N. Y.) 240, it was held the singular included the plural as used in a municipal ordinance requiring a certain estimate to contain the name and place of residence of the person making it, where more than one person joined in making the estimate. In *Dixon* v. *Rickets*, 26 Utah, 215 [72 Pac. 947, 949], the singular was construed as implying the plural in a statute imposing an inheritance tax upon any property passing by will or inheritance to any person in trust or otherwise. But in *Denny* v. *Smith*, 18 N. Y. 567, 568, "person" was held not to include "persons" in a statute suspending the running of the statute of limitations as against any person out of the state, so that both of two joint debtors must reside out of the state the length of time required to avoid the statute.

The ordinance involved herein would be entirely ineffectual, if not discriminatory, if it made the keeping of goats lawful when done by several persons and unlawful when done by one. Construing the word "person" as including the singular only, the intention of the legislature would be defeated and an absurd result reached. We are therefore of the opinion it should be read as including the plural, and in view of this conclusion petitioner's contention fails.

[10] With reference to the second objection that even if the ordinance is defective in not providing for such a possibility, it is not to be held invalid for that reason, as the board of directors cannot be expected to have guarded against every contingency. The likelihood of such a situation arising may be very remote and the reasonableness of a police regulation is not to be tested by its possible application to extreme cases (*Commonwealth* v. *Plaisted*, 148 Mass. 375, 382 [12 Am. St. Rep. 566, 2 L. R. A. 142, 19 N. E. 224]). The means adopted in the ordinance are appreciably related to the end sought to be accomplished, which is all that is required (*Lawton* v. *Steele*, 152 U. S. 133 [38 L. Ed. 385, 14 Sup. Ct. Rep. 499, see, also, Rose's U. S. Notes]).

The writ is discharged.

Lennon, J., Waste, J., Myers, J., Seawell, J., Kerrigan, J., and Wilbur, C. J., concurred.

Rehearing denied.