277 P.2d 45]

[Civ. No. 4787.   Fourth Dist.   Nov. 18, 1954.]

THE PEOPLE, Respondent, v. VERNON JOHNSON, Appellant.

King & Mussell for Appellant.

Lowell E. Lathrop, District Attorney (San Bernardino), and Edward F. Taylor, Deputy District Attorney, for Respondent.

GRIFFIN, J.—As the result of an action to enjoin a claimed continuing violation of zoning ordinance number 678, of San Bernardino County, brought by said county on February 16, 1953, in the name of the People of the State of California, against defendant and appellant Vernon Johnson, the trial court, on August 5, 1953, rendered judgment in favor of plaintiff and respondent.

Zoning ordinance number 678 was enacted on July 9, 1951, and became effective on August 8, 1951. It provided a general scheme for zoning the unincorporated area of San Bernardino County to "promote, protect and secure the public health, safety and general welfare" of said county.

On April 14, 1950, defendant, who was a licensed dealer in hogs and cattle, purchased eight acres of land near Colton for $1,750. A new schoolhouse had been erected in the neighborhood, and some of the adjoining land had been opened up for subdivision purposes and homes were built thereon. Defendant claims that at the time he purchased the property he intended to use it for the purpose of temporarily placing thereon cattle and hogs during the interval between purchase and sale of such livestock. He testified that thereafter he constructed a barbed wire fence around it and put in a few ''hog lots'' costing about $150, and piped the land for water; that due to road conditions only cattle were kept there, but in February, 1952, hogs were brought to the property. The *modus operandi* of defendant was to purchase hogs in small lots from surrounding territory, keep them on the property three or four days until he had enough to fill a truck, and they were then carted to the market in Los Angeles.

Ordinance number 678 declares that, in addition to criminal penalties, the keeping and maintenance of more than five hogs in an M-1 (limited manufacturing) district or. zone, constitutes a public nuisance. This M-1 district was established prior to the time when defendant used the land for the keeping of hogs. Defendant admitted he thereafter kept up to 40 hogs on the property, but claims there were a few days, on occasions, when there were no hogs on the premises. He stated that he intended to continue the same operation of his premises unless restrained from so doing.

After hearing, the trial court issued a peremptory injunction restraining defendant from keeping or maintaining more than five hogs on the premises, and adjudged the condition a public nuisance.

Defendant appealed and contends first, that no cause of action under Code of Civil Procedure, section 731, was alleged or proved, and since a court of equity has no authority to abate a public nuisance except in specific cases where authority has been granted by the Legislature, a civil action to enjoin a nuisance in the name of the People must find its sanction in that section; that it is immaterial that the ordinance, by its terms, declares such violations to be public nuisances; that no legislative body can, by its mere assertion, make that a nuisance which is not in fact a nuisance; that the California Constitution limits the power of counties to make and enforce within their limits only such local police, sanitary and other regulations as are not in conflict with general laws; that if

a county ordinance purports to extend and enlarge the definition of public nuisances it is to that extent in conflict with the general law; that otherwise the ordinance is an unreasonable and unjustifiable exercise of the police power; and that injunction will not lie to enforce a penal law except in case of nuisances or unfair competition, citing such authority as *People* v. *Robin,* 56 Cal.App.2d 885 [143 P.2d 436]; *People* v. *Lim,* 18 Cal.2d 872 [118 P.2d 472]; *Kreling* v. *Superior Court,* 18 Cal.2d 884 [118 P.2d 470]; Civ. Code, §§ 3479, 3480; *People* v. *Oliver,* 86 Cal.App.2d 885 [195 P.2d 926]; Civ. Code, § 3494; Gov. Code, § 26528; *Board of Supervisors* v. *Simpson,* 36 Cal.2d 671 [227 P.2d 14]; *Laurel Hill Cemetery* v. *City & County of San Francisco,* 152 Cal. 464 [93 P. 70, 14 Ann.Cas. 1080, 27 L.R.A.N.S. 260]; Cal. Const., art. XI, § 11; 7 Cal.Jur., p. 534, § 102; *Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 P. 14]; and Civ. Code, § 3369.

The power of cities and counties to zone is derived from section 11, of article XI of the California Constitution, which provides:

"Any county . . . may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

■ Zoning is inherent in the police power, and the concept of comprehensive zoning has been sustained by the Supreme Court of California in *Miller* v. *Board of Public Works,* 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479]. ■ The police power granted to the counties includes the power to zone. (*Smith* v. *Collison,* 119 Cal.App. 180, 186 [6 P.2d 277]; *Acker* v. *Baldwin,* 18 Cal.2d 341 [115 P.2d 455].) The Conservation and Planning Act of 1947 (Stats. 1947, chap. 807, § 77, p. 1922) subsequently placed in the Government Code in 1951 (§ 65090 et seq.) authorizes a master plan which may comprise any, all, or any combination of plans specified, including "Land Use Plan . . . an inventory and classification of natural land types and of existing land cover and uses, and comprehensive plans for the most desirable utilization of land." (§ 65464.) Sections 65300-65301 not only authorize planning commissions for counties but direct that they *shall* be created by ordinance.

■ It is apparent then, that the ordinance, as enacted under such legislative authority, is a valid exercise of the county's legislative power, as authorized by the section of the Constitution enacted. ■ It follows that a county has power

to enact zoning ordinances where its charter expressly confers upon the legislative body all the police powers that are vested in municipalities by the Constitution. (*Brougher* v. *Board of Public Works*, 205 Cal. 426 [271 P. 487].) ■ The police power, as evidenced by zoning regulations, has a much wider scope than the mere suppression of offensive uses of property. It acts not only negatively, but affirmatively, for the promotion of the public welfare. ■ The power to zone is not limited to the protection of established districts. On the contrary, zoning looks not only backward to protect districts already established, but forward to aid in the development of new districts. ■ It is established that the power to zone extends to the regulation of uses of property which do not actually amount to nuisances. (12 Cal.Jur. 10-Yr. Supp., p. 142, § 2 et seq.)

A final arbitrary definition of public nuisances that can be neither modified nor supplemented by further legislation is not intended in Code of Civil Procedure, section 731. ■ A city has the power to pass general police regulations to prevent nuisances, and such power is not limited to the suppression of those things which are nuisances *per se* within the meaning of section 370 of the Penal Code and sections 3479 and 3480 of the Civil Code. (*In re Mathews,* 191 Cal. 35 [214 P. 981].) Public nuisances, declared under the Red Light Abatement Act, is one of these exceptions. (*Board of Supervisors* v. *Simpson,* 36 Cal.2d 671 [227 P.2d 14].) ■ The general rule is that where the Legislature has not enacted statutes specifying that an activity contrary to public policy constitutes a public nuisance which may be enjoined in an action on behalf of the state, the courts will not ordain such jurisdiction for themselves. (*Monterey Club* v. *Superior Court,* 48 Cal.App.2d 131 [119 P.2d 349].) In the instant case the county of San Bernardino is a chartered county and its charter was approved by legislative act. (Stats. 1913, chap. 33, p. 1652.) It gave to the officers of that county such "powers and duties as are or shall be provided for in this charter."

In the case of *In re Mathews,* 191 Cal. 35 [214 P. 981], where a city ordinance declared it to be a nuisance and unlawful for any person to keep or maintain any goat within a described area in the city, the same contention was made, i.e., that the ordinance conflicted with the state law. It was contended that by section 370 of the Penal Code and sections 3479 and 3480 of the Civil Code certain things had been de-

clared public nuisances; that a municipality is without authority to determine that a specific act is within the code definitions and that the city, by providing regulations on the subject of keeping goats, recognized that when so kept they are not a nuisance, and that by the ordinance they attempted to bring the keeping of goats within the definition of a nuisance. It was there said that a city clearly has power to pass general police regulations to prevent nuisances, and such power is not limited to the suppression of those things which are nuisances *per se* within the meaning of the code sections, citing *Odd Fellows' Cemetery Assn.* v. *San Francisco*, 140 Cal. 226, 231 [73 P. 987], where it is said:

"Whenever a thing or act is of such a nature that it may become a nuisance, or may be injurious to the public health, if not suppressed or regulated, the legislative body may, in the exercise of its police powers, make and enforce ordinances to regulate or prohibit such act or thing, although it may never have been offensive or injurious in the past."

Also cited in the Mathews case was *Ex parte Shrader*, 33 Cal. 279, 284, where it is said:

"The power to regulate or prohibit conferred upon the Board of Supervisors not only includes nuisances, but extends to everything 'expedient for the preservation of the public health, and the prevention of contagious diseases.' "

After quoting from these cases the court in the Mathews case then said:

"The mere fact that in the ordinance the subject matter is referred to as a nuisance cannot invalidate the enactment if the city had the power to pass it," and held that "the keeping of goats at any point within the city limits is inimical to the public welfare unless the sanitary regulations provided are complied with. . . ." *Boyd* v. *City of Sierra Madre*, 41 Cal.App. 520, 527 [183 P. 230], is cited in respect to the power of a city to pass police regulations, where it is declared: "Primarily, it is for the city's legislative body, clothed with police power by direct grant from the constitution, to determine when and what regulations are essential; and its determination in this regard, in view of its better knowledge of all the circumstances and the presumption that it is acting with due regard for the rights of all parties, will not be disturbed by the courts, unless it plainly can be seen that the regulation has no relation to the protection of health, safety, comfort or well-being of the community, but is a clear

invasion of personal or property rights under the guise of police regulation."

It was then said that the keeping of animals may be a proper subject of municipal regulation, and that by such regulation the number of animals which may be kept may be limited. See also *Laurel Hill Cemetery* v. *City & County of San Francisco*, 152 Cal. 464 [93 P. 70, 14 Ann.Cas. 1080, 27 L.R.A.N.S. 260].

The ordinance here involved provides that any use of property contrary to its provisions is declared "to be unlawful and a public nuisance," and it authorizes the district attorney to commence an action to abate, restrain or enjoin any person from using such property contrary to the provisions of the ordinance.

In addition to the finding that the provisions of the ordinance had been breached, as indicated, the court also found, upon substantial evidence, that since March, 1952, defendant "kept, maintained, and used" said premises for the keeping and maintaining of more than five hogs, in violation of the ordinance; that at no time prior to March, 1952, were the premises used for keeping or maintaining more than five hogs; that such use constituted a public nuisance under the ordinance and that such keeping and maintaining of more than five hogs thereon causes odors and dust to be emitted from said premises over and upon the adjacent streets and property and are injurious to the health and offensive to the senses so as to interfere with the enjoyment of life and property of a considerable number of persons living in the community and in the immediate neighborhood.

In *People* v. *Lim*, 18 Cal.2d 872 [118 P.2d 472], the rule in relation to injunctive relief rather than criminal prosecution is stated to be, quoting from *State* v. *Ehrlick*, 65 W.Va. 700 [64 S.E. 935, 23 L.R.A.N.S. 691]:

" 'It is also competent for the legislature, within the constitutional limits of its powers, to declare any act criminal and make the repetition or continuance thereof a public nuisance . . . or to vest in courts of equity the power to abate them by injunction; but it is not the province of the courts to ordain such jurisdiction for themselves.' "

In *City of Stockton* v. *Frisbie & Latta*, 93 Cal.App. 277 [270 P. 270], it was held that where the personal welfare and the property rights of a large number of the inhabitants of a city or town would be detrimentally affected by the violation of a police or sanitary regulation, whether the ordi-

nance provides other means for its enforcement or not, such city or town may itself appeal to a court of equity by means of the forceful and singularly effective writ of injunction to restrain such violation or to cause the wrongful effect thereof to be removed. To the same effect is *City of Yuba City* v. *Cherniavsky*, 117 Cal.App. 568 [4 P.2d 299] ; *County of San Diego* v. *McClurken*, 37 Cal.2d 683 [234 P.2d 972] ; and 62 C.J.S. 631, § 281. It therefore appears that the contentions above made are sufficiently disposed of by the cited cases.

The second claim is that ordinance No. 678, if construed to support the injunction in the present case, conflicts with Code of Civil Procedure, section 731a, which section provides that, with respect to commercial and manufacturing uses, where certain uses are expressly permitted, no such use would be deemed a nuisance without evidence of the employment of unnecessary and injurious methods of operation, and since there is no such evidence the judgment entered was erroneous.

This question was raised in *In re Jones*, 56 Cal.App.2d 658 [133 P.2d 418], but was not decided because it was not material to a determination of the question there presented. It appears that the ordinance here involved did permit a use to the extent of keeping and maintaining not exceeding five hogs, but when that number was exceeded, such additional use was prohibited. Therein lies the main distinction from the cases relied upon by defendant. If defendant limited the number of hogs to be kept to five there would be merit to this contention. The section itself provides for an exception in an action to abate a public nuisance brought in the name of the People of the State of California.

The next contention is that the evidence did not support the finding that defendant "kept and maintained" more than five hogs on the premises, within the commonly accepted meaning of those terms, or within the definitions contained in the ordinance, since the evidence shows they were not permanently maintained there but the premises were only used as a trucking terminal, and that since the ordinance provides (§ 12.3) that uses permitted in M-1 zone are for "distribution plants,"—"feed and fuel storage yards," "trucking yard or terminal," defendant's activities are expressly permitted, and since defendant's intention to use the property for hogs and the expenditure of money in the amounts and for the purposes indicated established a nonconforming use existing prior to the date the ordinance became effective, such

nonconforming use was permitted in the terms of the ordinance itself, citing section 15.5, subdivisions b, c, e, f, and g thereof; and *County of San Diego* v. *McClurken,* 37 Cal.2d 683 [234 P.2d 972].

It is a general rule that a continued nonconforming use must be similar to the use existing at the time the zoning ordinance exempting it became effective, and in determining whether the nonconforming use was the same before and after the passage of a zoning ordinance, each case must stand on its own facts, and it is usually a question of fact for the trial court, notwithstanding the majority holding in the McClurken case. (*Edmonds* v. *County of Los Angeles,* 40 Cal.2d 642 [255 P.2d 772].) The finding of the trial court that at no time prior to March, 1952, were said premises used for the *keeping and maintaining* of more than five hogs is supported by the evidence notwithstanding defendant's statement that he did intend, sometime in the future, to use it for the purpose of temporarily keeping thereon more than five hogs.

In *O'Rourke* v. *Teeters,* 63 Cal.App.2d 349 [146 P.2d 983], it was said:

"The fact that a party makes a large investment in a city lot, which at the time it is purchased is free of restrictions, with intent to use it for business purposes does not invalidate a zoning ordinance subsequently adopted restricting the use of the property to residential purposes." (Citing cases.)

It is well settled that when an ordinance is passed relating to a matter which is within the legislative power of the municipality, all presumptions are in favor of its validity, and when it is attacked the burden is upon the party alleging its invalidity to establish that fact. (*City of Yuba City* v. *Cherniavsky,* 117 Cal.App. 568 [4 P.2d 299].) The general rule in this respect is stated in 18 California Jurisprudence, page 858, section 158, as follows:

". . . An ordinance fixing limits within which a disagreeable business may be exercised which has in fact some relation to the public health, and is appropriate and adapted to that end, is not objectionable as depriving the owner of his property without due process of law or without compensation. . . . The right of the legislative body to pass zoning ordinances is not limited by the fact that the value of investments made in the business prior to any legislative action will be greatly diminished, for a business which when established was entirely unobjectionable may, by the growth

of population in the vicinity, become a source of danger to the health and comfort of those who have come to be occupants of the surrounding territory.''

There is no showing in the instant case that the zoning ordinance in reference to the matter here under discussion is unreasonable in any particular or in violation of defendant's constitutional rights, as claimed.

The contention that defendant was not, under the evidence produced, *occupying and maintaining* hogs on his premises in violation of the ordinance because he was dealing with them in resale only, is untenable. Locating a prohibited number of hogs on the premises for the times indicated, over a period of months, even though they were not at all times the same hogs, would be ''keeping and maintaining'' hogs on the premises within the meaning of that section. If the stench was still perceptible to the olfactory senses of the adjoining neighbors, the identity of the individual offending hogs would become unimportant. (*Ex parte Glass*, 49 Tex. Crim. 87 [90 S.W. 1108].) See 23 Words and Phrases (perm. ed.) 498, wherein it is said:

''The word 'keep' as applied to animals, has a peculiar signification.'' It means '' 'to tend; to feed; to pasture; to board; to maintain; to supply with necessaries of life.' ''

The last claim is that ordinance number 678 was amended by ordinance number 688, effective 30 days after February 25, 1952, and that since defendant had actually placed nine hogs on the premises by that time, the judgment herein was erroneous. The original ordinance prohibited more than five hogs to be kept on the premises, and defendant's property was classified as being in M-1 district at the time. The claimed amendment referred only to the matter of adopting additional land use district maps as a part of the official land use plan. Although these maps did include defendant's property, there was no change in the original ordinance in reference to the subject matter herein discussed. There is no merit to this contention.

Judgment affirmed.

Barnard, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 12, 1955. Carter, J., was of the opinion that the petition should be granted.