TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 92-306 |
| of | : | |
| | : | |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | <u>OCTOBER 21, 1992</u> |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE QUENTIN L. KOPP, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following questions:

1. May a city or county prohibit by ordinance the parking of particular categories of vehicles on private property, such as private driveways, private residential streets, and private commercial parking lots?

2. If so, may a city or county enforce the ordinance by removing parked vehicles from private property even if the vehicles are duly licensed and operational and on the private property of their owners?

CONCLUSIONS

1. A city or county may generally prohibit by ordinance the parking of particular categories of vehicles on private property, such as private driveways, private residential streets, and private commercial parking lots.

2. A city or county may enforce an ordinance prohibiting the parking of particular categories of vehicles on private property by removing such vehicles even if they are duly licensed and operational and on the private property of their owners, provided that due process requirements have been met and the vehicles so parked have been declares by the ordinance to be public nuisances.

ANALYSIS

We are informed that a city council is contemplating the enactment of an ordinance prohibiting the parking of motor homes and other large recreational vehicles, including those with boat trailers attached, in certain residential and business areas of the city. The primary purpose of the ordinance would be to enhance the city's appearance. The questions to be resolved are whether

such an ordinance would be valid, and if so, may the ordinance be enforced by the removal of any vehicle in violation thereof.

## 1. Validity of the Ordinance

The general authority of cities and counties to adopt regulations and ordinances is set forth in Article XI, section 7 of the California Constitution:

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

This authority, often referred to as the "police power," is thus a plenary power subject only to the limitations that it be exercised by cities and counties within their territorial limits and be subordinate to state law. Apart from these limitations, a city's or county's police power is as broad as the police power exercisable by the Legislature itself. (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885; *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140; 73 Ops.Cal.Atty.Gen. 28, 29-30 (1990); 73 Ops.Cal.Atty.Gen. 13, 13-14 (1990).) Of course, the exercise of the police power by the Legislature or by cities and counties is subject to the limitations imposed by the state and federal Constitutions. Among these limitations are the requirements that the ordinance be rationally related to a legitimate governmental concern (*Metromedia, Inc.* v. *City of San Diego* (1981) 453 U.S. 490, 512; *Schad* v. *Mt. Ephraim* (1981) 452 U.S. 61, 68), that it does not result in the taking of property without just compensation (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 272-273, 277; *Lucas* v. *South Carolina Coastal Council* (1992) 505 U.S. _____ [120 L.Ed. 2d 798]), and that it does not result in the deprivation of property without notice and the opportunity to be heard (*Conner* v. *City of Santa Ana* (9th Cir. 1970) 897 F.2d 1487, 1492).

Generally speaking, ordinances which restrict parking on private property are enacted for purposes of promoting traffic safety or enhancing the appearance of a city or county, both of which have been found by the United States Supreme Court to be substantial governmental interests. (*Metromedia, Inc.* v. *City of San Diego*, *supra*, 453 U.S 490, 507-508.) Regulations to further these two goals fall within the permissible bounds of the police power of a city or county. (*Duffy* v. *City of Arcadia* (1987) 195 Cal.App.3d 308, 311.) In *People* v. *Tolman* (1980) 110 Cal.App.3d. Supp. 6, 10, an ordinance prohibiting the parking on private property of registered commercial vehicles weighing more than three tons was upheld by the court because it bore "an adequate relation to the general welfare by being considered as a regulation of the aesthetic appearance of residential neighborhoods."

Recently in *Crown Motors* v. *City of Redding* (1991) 232 Cal.App.3d 173, the court dealt with a challenge to an ordinance which banned electronic reader-board signs based upon a city finding that "such signs are aesthetically displeasing and out of harmony with the character of this community so as to constitute visual blight which reduces the quality of life within the community to the extent that the overall public health is detrimentally affected." (*Id.*, at pp. 176-177.) The court upheld the ordinance, stating:

"Crown Motors contends 'public health' cannot be equated with 'aesthetics.' Since the city council referred to aesthetics as the justification for adopting the urgency ordinance, Crown Motors maintains the city council could not base the immediate effectiveness of the ordinance on public health. We disagree.

"The United States Supreme Court has recognized the legitimacy of basing restrictive local legislation on aesthetic concerns. ' It is well settled that the state may legitimately exercise its police powers to advance aesthetic values.' (*City*

*Council* v. *Taxpayers for Vincent* (1984) 466 U.S. 789, 805 [80 L.Ed.2d 772, 787, 104 S.Ct. 2118].)  Further, '[t]he Constitution itself confers upon all cities and counties the power to 'make and enforce within [their] limits all local, police, sanitary, and other ordinances and regulations not in conflict with the general laws.' (Cal. Const., art. XI, § 7.)  A city's police power under this provision can be applied only within its own territory and is subject to displacement by general state law but otherwise is *as broad as the police power exercisable by the Legislature itself.*' (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140, italics added.)

" ' Public health' must be interpreted according to the circumstances in which it is used.  It is 'not susceptible to accurate definition since it takes on new definitions when new conditions arise, but generally speaking, it means the wholesome condition of the community at large.' (*Chisholm* v. *California Jockey Club* (1958) 164 Cal.App.2d 367, 369, quoting 39 C.J.S., Health, § 1, p. 811.)  The city council has broad powers in enacting ordinances to maintain the public health within its jurisdiction.  (*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 72; Cal. Const., art. XI, § 7.)

"We see no reason to restrict from these broad powers, within the spectrum of public health, the power of the city council to advance the quality of life in the community by eliminating visual blight.  Mental health is certainly included in the public health.  `[T]he city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect.' (*Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 71 [49 L.Ed.2d 310, 327, 96 S.Ct. 2440], quoted in *City Council* v. *Taxpayers for Vincent*, *supra*, 466 U.S. at p. 807 [80 L.Ed.2d at p. 789].)  The broad definition of public health and the city council's broad powers to implement general policy lead us to conclude aesthetics may be properly considered a public health matter under the circumstances of this case."

For purposes of this analysis, we will assume that the ordinance to which the question refers would in fact bear a reasonable relation to a legitimate governmental purpose.  The focus of our inquiry then becomes whether the ordinance would conflict with California's general laws and thereby violate Article XI, section 7 of the California Constitution.  In the context of the question before us, the Vehicle Code represents the area of general law with which the ordinance would be most apt to be in conflict.  To the extent that it occupies certain fields of law, such as traffic regulation and control, the Vehicle Code preempts local legislative action.  (See *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 551; *City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 755-756; 73 Ops.Cal.Atty.Gen. 13, 14 (1990).)

The Vehicle Code contains its own preemption rule in section 21,[1] which provides as follows:

"Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the state and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized therein."

---

1.    All section references hereafter to the Vehicle Code are by section number only.

In answering the first question presented, we are thus concerned with whether the Vehicle Code covers the parking of particular categories of vehicles on private property and, if so, whether it contains any provisions which expressly authorize cities and counties to enact their own regulations in that area. As there are different considerations implicit in each of the three types of parking ordinances outlined in the question, we will address each in turn.

### A. Parking of Vehicles on Private Driveways

The need for regulating vehicles parked in driveways[2] would most likely arise from the "visual blight" which may be engendered when the presence of a certain type of parked vehicle is inconsistent with the use of the property permitted under city or county land use regulations. Blight control or nuisance ordinances typically prohibit such things as the parking of construction and commercial vehicles in areas zoned for residential uses, the parking of inoperable vehicles for more than a certain length of time in residential areas, and the parking of trailers, motor homes, and recreational vehicles in front yard setback areas (which may or may not include driveways) for more than a certain length of time. (See *People* v. *Tolman*, *supra*, 110 Cal.App.3d Supp. 6; *Sechrist* v. *Municipal Court* (1976) 64 Cal.App.3d 737; *In re Scarpitti* (1981) 124 Cal.App.3d 431.) Such ordinances are concerned with the local use of property and are generally grounded in zoning laws.

The Vehicle Code, on the other hand, primarily seeks to achieve uniform regulation in the enforcement of matters relating to traffic control, traffic safety, and vehicle equipment. (*Rumford* v. *City of Berkeley, supra*, 31 Cal.3d 545, 550; *City of Lafayette* v. *County of Contra Costa, supra,* 91 Cal.App.3d 749, 755.) Parking on private driveways, as distinguished from parking on private roads used for vehicular traffic, would have at most only an indirect effect upon traffic control or safety. The Vehicle Code does not preclude regulations enacted for non-traffic purposes which only incidentally affect the preempted field. (*People* v. *Mueller* (1970) 8 Cal.App.3d 849, 954.)

At most, then, we believe that the regulation of parking on private driveways would be an exercise of local authority which would only affect incidentally the fields of traffic control and traffic safety. Therefore, a local entity may, consistent with constitutional requirements, enact an ordinance prohibiting the parking of certain categories of vehicles on private driveways.

### B. Parking of Vehicles on Private Residential Streets

_____

2. "Parking" is defined in section 463 as follows:

"'Park or parking' shall mean the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading merchandise or passengers."

The term "private road or driveway" is defined in section 490 as:

". . . a way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other members of the public."

The terms "parking" and "driveway" are used in the Vehicle Code with reference to vehicular activity on roads and in parking lots. (See §§ 21107, 22108, 21111, 21360, 21804.)

It has long been recognized that the right to exclusive control of vehicular traffic on *public* streets and highways resides with the state. (*Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 372-373; *City of Lafayette* v. *County of Contra Costa*, *supra*, 91 Cal.App.3d 749, 753-756; 64 Ops.Cal.Atty.Gen. 707, 710 (1981).) And it is well-established that the regulation of parking on public streets and highways is a legitimate aid to such traffic control and regulation. (*County of Los Angeles* v. *City of Alhambra* (1980) 27 Cal.3d 184, 192-193.) We have previously concluded that the state has preempted local legislation dealing with parking on public streets and highways. (64 Ops.Cal.Atty.Gen. 707, 710 (1981).)

In order to determine whether a city or county is preempted from enacting an ordinance which would prohibit the parking of vehicles on *private* roadways, we must properly apply the prohibition of section 21 that "no local authority shall enact or enforce any ordinance on the *matters covered by the code* unless expressly authorized herein." (Emphasis added.) As we stated in 30 Ops.Cal.Atty.Gen. 69, 71 (1957):

> ". . . the Vehicle Code is composed of several fields of law, and the problem becomes to determine with respect to each field whether the Legislature intended to fully occupy that field. . . ."

We have previously determined that, within the field of vehicular noise limits, control over noise with respect to *off*-highway use directed at vehicle operators was not covered by the Vehicle Code (55 Ops.Cal.Atty.Gen. 178, (1972)); that within the field of drivers' and operators' licenses, the matter of licensing the operators of self-propelled wheelchairs was not covered by the traffic laws division of the Vehicle Code (30 Ops.Cal.Atty.Gen. 69 (1957));[3] that within the field of fire or public safety, the matter of parking a vehicle on that portion of a *private way* which had been designated a fire lane was either a matter not covered by the Vehicle Code or one that only incidentally affected the field (traffic control and regulation) preempted by the code (64 Ops.Cal.Atty.Gen. 707 (1981)); and that within the fields of traffic control and public safety, at least as to *public* streets and highways, the matter of parking of vehicles *was* covered by the Vehicle Code and was subject to a limited exception permitting local authorities to prohibit the parking of vehicles on certain streets or highways (73 Ops.Cal.Atty.Gen. 13 (1990)).[4]

---

3. At the time the cited opinion was issued, Vehicle Code preemption extended only to the division of the code dealing with traffic laws.

4. The exception at issue in 73 Ops.Cal.Atty.Gen. 13 (1990) is contained in section 22507. It permits local authorities to prohibit or restrict the stopping, parking, or standing of vehicles, including, but not limited to, vehicles which are six feet or more in height (including any load thereon) within 100 feet of any intersection, on certain streets or highways, or portions thereof during all or certain hours of the day. This provision does not restrict parking on private roads because, by its own terms, it applies to streets and highways, which under section 360 are defined as "way[s] or place[s] of whatever nature, *publicly maintained and open to the use of the public* for vehicular travel. . . ." (Emphasis added.) Therefore, the provision is not relevant to the issue of preemption of local legislation in matters of parking on private roads or driveways. Where, however, a city or county has elected to apply the Vehicle Code to private roads pursuant to section 231107.5 (see *infra*), an ordinance which makes *private roads* subject to the restrictions authorized by section 22507 would not be in conflict with state law. Our 1990 opinion included an interpretation of section 22507, unrelated to the present inquiry, that was rejected by the Court of Appeal in *People* v. *Garth* (1991) 224 Cal.App.3d 1797, 1800-1801.

Here, the field in question may be considered to be traffic control, public safety, or blight control. The first of these fields is, as we have seen, preempted as to the parking of vehicles on *public* ways. However, with respect to the parking of vehicles on *private* roads, it appears that such matter is only partially covered by the code. We made the following observation in 64 Ops.Cal.Atty.Gen. 707, 711 (1981):

> "At the time Vehicle Code section 21 was enacted in 1959, only five provisions concerning traffic control and regulation on private property were in effect. (§§ 21107 (based on former § 458.5); 21108 (based on former § 459.3); 21111 (based on former § 459.7); 22500 (based on former §§ 586(a), 586.1); and 22503 (based on former § 588(b), (c)).) The former sections authorized local authorities to enact traffic regulations with respect to certain private roads, but it cannot be said that the code coverage was comprehensive. In fact, there are currently no provisions which specifically regulate the parking of vehicles on private roadways."

As in our 1981 opinion, there are still no current provisions of the Vehicle Code which specifically and directly regulate the parking of vehicles on private roadways. Instead, there are three provisions which allow local authorities to make the Vehicle Code applicable to certain privately owned and maintained roads. Section 21107.5 governs roads that are generally held open for use by the public for vehicular travel and which so connect with highways that the public cannot determine that the roads are not highways, provided the owner has not already posted the road as being privately owned and maintained and not subject to public traffic regulations or control. Section 21107.6 concerns roads which are generally held open to the public for purposes of vehicular travel to serve commercial establishments, provided the owner has not already posted the road. The third is section 21107.7 which relates to roads not generally held open for use of the public for purposes of vehicular travel but which, by reason of their proximity to or connection with highways, would better serve the interests of the residents residing along the roads and the motoring public by being made subject to the code, provided that a majority of the road owners request such action.

In addition, sections 21108 and 21111 permit local authorities to adopt rules and regulations for the purpose of regulating vehicles on privately owned and maintained roads in private airports and publicly operated housing projects, provided that the rules or regulations are implemented by the posting of appropriate signs along such roads. Finally, section 21107 permits cities having no publicly maintained city streets to adopt rules and regulations to regulate vehicular traffic on privately owned and maintained roads, provided again that the rules or regulations are implemented by the posting of signs.

This pattern of legislative activity regarding regulation of private roads shows an intent by the Legislature that, except in narrow circumstances, the Vehicle Code is to apply wherever there is a *need* for traffic control and regulation. Uniformity of regulation in the enforcement of matters relating to traffic control is a primary goal of the Vehicle Code (§ 21), and where traffic on private roads is such that it requires regulation, the rules as between public and private roads should be uniform to the extent possible. Thus, under our view of Vehicle Code preemption principles, if the local authority seeks to prohibit the parking of particular categories of vehicles on private residential streets for reasons of *traffic regulation and control*, it would be limited to the adoption of whatever restrictions the Vehicle Code itself affords.

With respect to the field of public safety, greater latitude exists for local authorities to enact ordinances regulating parking on private residential streets. In 64 Ops.Cal.Atty.Gen. 707, 711 (1981), we determined that the Vehicle Code did not preempt local legislation in the field of

public safety with respect to the parking of vehicles on private ways, although such matter was partially covered by the code. We there observed that:

> ". . . while the Legislature has exhibited concern with respect to the field of fire or public safety as to public streets and highways (e.g., §§ 22104 (prohibiting U-turn in front of a fire station), 22500(d) (prohibiting parking within 15 feet of the entrance of any fire station), 22514 (prohibiting parking within 15 feet of a fire hydrant) and 22651(e) (permitting the removal of an illegally parked vehicle so as to allow access by fire fighting equipment to a fire hydrant when it is impractical to move the vehicle to another point on the highway)), it has not done so with respect to private ways. We would note that section 35701 of the Streets and Highways Code states:

> " ' Any agreement to maintain parking meters on a public way *shall not affect the right of a city*, acting by virtue of its police power, *to control, regulate, or prohibit the parking of vehicles on any public way*, or portion thereof, to the extent necessary *to protect the public safety*.' (Emphases added.)" (*Ibid.*)

If the purpose of an ordinance prohibiting the parking of particular categories of vehicles on private residential streets is that of blight control, we have a situation similar to that discussed above in connection with private driveways. Here again, the Vehicle Code does not cover what is essentially a land use regulation. Unlike the driveway situation, traffic regulation and control is implicated to the extent that the ordinance deals with roadways, but that state interest would appear to be only incidentally affected. As a blight control ordinance and not a traffic ordinance, the prohibition against parking on private residential streets may be viewed in the same light as the ordinance at issue in *People* v. *Deacon* (1978) 87 Cal.App.3d Supp. 29. The holding of that case was made clear in 64 Ops.Cal.Atty.Gen. 707, 712 (1981), footnote 3:

> "In *People* v. *Deacon* (1978) 87 Cal.App.3d Supp. 29, the appellate department of the Los Angeles County Superior Court declared that there was no validity to the argument that regulation of *private* roads had been preempted by the state. (*Id.*, at Supp. 32-33.) The court was concerned with an ordinance which forbade motorcycle riding on an easement within Catalina Island. (*Id.*, at Supp. 31.) It was determined that the ordinance was *not* a traffic ordinance but one regulating the use of a particular and unique land area available for recreational purposes. (*Id.*, at Supp. 32.) In other words, the *Deacon* court concluded that any state regulation of private roads had not preempted the field as to *environmental matters*."

Similarly, it may be said here that the state's preemption of the field of traffic control and regulation does not extend to matters of blight control on private roads.

C.      Parking of Vehicles in Private Commercial Parking Lots

The principal Vehicle Code provision affecting private commercial parking lots is section 21107.8. It permits cities and counties to determine that there are privately owned and maintained off-street parking facilities within their boundaries that are generally held open for use by the public and thereby cause those facilities to become subject to specified provisions of the Vehicle Code. The code provisions applicable to private off-street parking facilities by means of section 21107.8 are sections 22350 (basic speed law), 23103 (reckless driving), 23109 (speed contests and exhibitions of speed), and Division 16.5 (off-highway vehicles). In addition, there are two code provisions dealing with parking which are independently applicable to off-street parking

facilities:  section 22507.8 (parking on privately maintained off-street parking facilities with respect to disabled persons) and section 22500.1 (parking in a fire lane in off-street parking facilities).

Unlike the situation with respect to vehicular activity on private streets, only selected portions of the code may be made applicable to vehicular activity in private commercial parking lots. Other than Division 16.5, which pertains to off-highway vehicles, the provisions made applicable through section 21107.8 deal exclusively with hazardous vehicular movement.  The act of parking a vehicle in an off-street parking facility is thus governed by only two specialized code provisions, sections 22507.8 and 22500.1.  This minimal application of state law to privately owned and maintained off-street parking facilities indicates a legislative intent not to preempt local legislation in the field of traffic regulation and control, or any other field, as to matters of parking in such facilities.  We thus conclude that local authorities may regulate off-street parking facilities with respect to the parking of certain categories of vehicles.

2.	Enforcement of the Ordinance

We are next asked to determine whether an ordinance which prohibits the parking of particular categories of vehicles on private property may be enforced by removal of the offending vehicles even if the vehicles are duly licensed and operational and on the private property of their owners.  As previously discussed, such ordinances will generally not conflict with or be preempted by state law when enacted for reasons of public safety or aesthetics.  However, preemption remains an issue in connection with the removal of the vehicles in violation of those enactments.

With the Legislature's enactment of Chapter 10 of the Vehicle Code, the state has entered the field of vehicle removal (see § 22650, *et seq*.).  Under the provisions of section 22651, subdivision (n), local authorities may remove vehicles from posted areas where, by resolution or ordinance, parking has been prohibited and removal authorized.  With regard to vehicles parked on private property, the property owner may seek removal pursuant to sections 22658 and 22658.2. Vehicle removals from private property are also authorized under the following circumstances:  an alarm device has been activated within a vehicle parked in a residential area and the owner of the vehicle cannot be located within 45 minutes (§ 22651.5); a report has previously been made that the vehicle has been stolen or a complaint has been filed and a warrant issued charging that the vehicle has been embezzled (§ 22653, subd. (a)); the vehicle has been involved in, and left at the scene of, a traffic accident and no owner is available to grant permission to remove the vehicle (§ 22653, subd. (b)); and the vehicle has been used in the commission of a public offense or the vehicle contains evidence, not readily removable, which tends to show that a crime has been committed (§ 22655.5).  In addition, cities and counties may, pursuant to sections 22660 and 22661, remove abandoned, wrecked, dismantled, or inoperative vehicles from private or public property when such vehicles constitute public nuisances.

It is evident that the vehicle removal statutes go beyond matters of traffic regulation and control. Two of the statutes, sections 22651.5 and 22660, deal substantively with the abatement of nuisances, an area which encompasses the principal means of physically enforcing blight control ordinances.[5/]  When the parking of certain vehicles on private property is found by local authorities to constitute a form of blight, such parking may be said to fall within the definition of "nuisance"

_____

5.	The remainder of this analysis concerns removal of vehicles for reasons of blight control.  The preemption and constitutional considerations therein would also apply to removals under a valid ordinance which finds the parking of certain categories of vehicles on private property to be a threat to public safety.

contained in Civil Code section 3479. That definition includes anything "offensive to the senses." A public nuisance is one that affects an entire community or neighborhood or any considerable number of persons. (Civ. Code, § 3480.) Local governments have broad discretion in designating public nuisances. (See *People* v. *Johnson* (1954) 129 Cal.App.2d 1, 6-7.) A public nuisance may be abated by any public body or authorized officer. (Civ. Code, § 3494.) Authority for the abatement of nuisances by municipalities is specifically provided in Government Code section 38771, *et seq.*

Although the Vehicle Code covers removal of vehicles from public streets, (e.g., §§ 22651, 22651.2) and addresses itself to the removal of certain vehicular nuisances on private property, the authority of local governments to abate a public nuisance is too well established for us to conclude that the Vehicle Code leaves cities and counties no additional room to use that authority when the offensive condition is caused by an operable vehicle parked on a private street or driveway. The limited circumstances under which the Vehicle Code provides for abatement of vehicular nuisances does not demonstrate a comprehensive treatment of local needs at the state level (see *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851) and therefore is not indicative of a paramount state concern. In the absence of a paramount state concern, additional local regulation is permitted in an area partially covered by state law. (See *In re Hubbard* (1964) 62 Cal.2d 119, 128.)

Finally, it should be noted that, as with the act of prohibiting the parking of certain types of vehicles on private property, the act of removing such vehicles is subject to constitutional limitations, particularly the search warrant and procedural due process (notice and hearing) requirements. Constitutional issues regarding vehicle removal under a nuisance ordinance were recently considered by the Ninth Circuit Court of Appeals in *Conner* v. *City of Santa Ana, supra,* 897 F.2d 1487. There, the court held that the search warrant requirement of the Fourth Amendment applies to entries onto private land to abate known nuisances. (*Id.*, at pp. 1490-1492.)[6/] With regard to the procedural due process requirements of notice and hearing, the court stated that these rights must be granted before the government may deprive a person of a protected liberty or property interest. (*Id.*, at pp. 1492-1493.) No violation of procedural due process was found by the court under the circumstances presented because the owners had been afforded notice and several opportunities to be heard before their automobiles were seized by the city. (*Id.*, at p. 1493.)

We thus conclude that if applicable constitutional requirements are observed, a city or county may remove a duly licensed and operational vehicle from the private property of its owner when the presence of the vehicle is in violation of a valid ordinance which declares the parking of particular categories of vehicles on private property to be a public nuisance.

\* \* \* \* \*

---

6.    In fact, as noted by the court, the State of California has set out the procedures for obtaining a warrant for inspecting nuisances. (Code Civ. Pro., § 1822.50, *et seq.*)